Wachtler, J.
Plaintiffs commenced this action to rescind a mortgage, bond and related agreements. After a trial it was held that an attorney-client relationship existed between the parties, but that the defendant attorney had "sustained the burden of proving the fairness of the transaction and that his clients understood the terms of the transaction.” By a divided court the Appellate Division affirmed solely on the ground that the plaintiffs’ action was barred by the Statute of Limitations.
In 1958 the plaintiff George Howard, suffering from a heart condition, decided to retire to Florida. At that time he owned a lot and commercial building in Mount Vernon, which yielded a net annual rental of approximately $15,000. The property was worth nearly $500,000, but was subject to a first mortgage of $280,000. Plaintiff contacted a local attorney to consider the possibility of selling the property and reinvesting the proceeds in order to increase his retirement income. He was advised that after paying the first mortgage and the capital gains taxes he would realize less than $100,000 which if invested would yield less than the property was currently producing.
At this point the local attorney contacted the defendant, an attorney who "specializes” in tax matters. After several meetings with the plaintiffs and their local counsel, defendant proposed a plan whereby the defendant would loan the plaintiffs a fixed amount of money in exchange for a mortgage, bond and option to purchase.
*698 The agreement which was finally made provided that the defendant would loan plaintiff George Howard an amount not to exceed $72,000 over an 18-year period as follows: $12,000 within 90 days, $2,000 semiannually for 10 years and $1,250 semiannually for the remaining 8 years. Receipt of the full amount depended upon two contingencies: (1) all payments would cease upon the death of George Howard and (2) defendant could stop payment at any time. In either event the amount advanced on the loan would remain secured by the mortgage, and would have to be repaid upon maturity of the bond.
In exchange for this loan the plaintiffs made various concessions. They signed a second mortgage which prohibited them from obtaining a third mortgage. In addition they were precluded from refinancing the first mortgage for an amount greater than the principal balance remaining on the first mortgage at the time of refinancing, and even then the principal must be amortized at $4,000 a year or more. They also agreed to permit defendant to participate in negotiations of any new lease, and to share any increase in the rental due to defendant’s efforts.
Finally the plaintiffs gave the defendant an option to buy the property exercisable upon the death of George Howard. As indicated, in that event the payments on the loan would cease, and the defendant could acquire title to the property for the amount of the loan actually advanced, and would, of course, have to satisfy the amount still outstanding on the first mortgage. Although this option became exercisable upon the death of George Howard, it would not expire until 15 months after the death of his wife. If defendant chose to exercise the option during her lifetime then he was required to pay her $9,000 annually for the remainder of her life—but this amount was to be paid solely out of the net income of the property. If the defendant ceased making payments on the loan prior to George Howard’s death then he forfeited the right to exercise his option to buy.
When the agreement was signed in 1959, the plaintiff George Howard was 55 and his wife 63. The principal on the first mortgage was being amortized at the rate of $5,800 a year.
The agreement is more complex than this; but these are the essential features. Basically the defendant acquired the right to purchase the property at an amount considerably below its *699 actual value. It is true, of course, that the property might have decreased in value, but the defendant had insured against this by reserving the right to cease making further payments on the loan. In view of this it would certainly appear that the defendant got the better of the bargain. Nevertheless we cannot say that the agreement is unfair as a matter of law. The crucial question is whether the defendant attorney established that the contract "was made by the client with full knowledge of all material circumstances known to the attorney, and was in every respect free from fraud * * * and that a reasonable use was máde by the attorney of the confidence reposed in him” (Whitehead v Kennedy, 69 NY 462, 466). The trial court held that he did, and that factual determination is beyond review in this court since the findings of fact have not been thus far overturned by the Appellate Division.
However we have concluded that the Appellate Division erred in affirming the judgment on the ground that the plaintiffs’ action was barred by the Statute of Limitations. "It is well settled that an owner in possession has a right to invoke the aid of a court of equity at any time while he is so the owner in possession, to have an apparent, though in fact not a real incumbrance discharged from the record, and such a right is never barred by the Statute of Limitations” (Ford v Clendenin, 215 NY 10, 16).
The defendant argues that the rule has no application here for two reasons: (1) the plaintiffs are not owners in actual possession because the property is currently leased and (2) the complaint does not satisfy the technical requirements of article 15 of the Real Property Actions and Proceedings Law. We disagree.
There is no requirement that the owner be in actual possession in order to invoke the remedies provided in article 15 of the Real Property Actions and Proceedings Law (cf. Helterline v People, 295 NY 245, 249).
In our view this complaint adequately states a cause of action under article 15 of the Real Property Actions and Proceedings Law since the plaintiffs, in essence, allege that they are the owners of record and that "the defendant claims, or * * * might claim an estate or interest in the real property, adverse to that of the plaintiff” (Real Property Actions and Proceedings Law, § 1515, subd b). The fact that the plaintiffs did not refer to the article or use the language of the *700 statute is not a fatal defect (Niagara Falls Power Co. v White, 292 NY 472, 480; CPLR 3026). That is not to say that the Real Property Actions and Proceedings Law will provide the plaintiffs the entire relief which they seek, for it may well be that their demand for judgment seeks more relief than the court could grant under the statute. That, however, is for the courts below to resolve (Niagara Falls, supra, at p 480).
The order of the Appellate Division should be modified by reversing on the plaintiff’s appeal and remitting for review of the facts, as well as the extent of relief, if any, to be granted pursuant to article 15 of the Real Property Actions and Proceedings Law. In connection with the cross appeal brought by the defendant attorney for counsel fees under the agreement we agree with the Appellate Division that the trial court’s determination that defendant is not entitled to those fees, should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order modified, without costs, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.