*420 OPINION OF THE COURT
Wachtler, J.
This action to rescind a mortgage, bond and option arrangement is now before our court for the second time. In essence, the plaintiffs claim that the defendant, an attorney specializing in tax law, took unfair advantage of the attorney-client relationship in contriving the agreements now sought to be avoided.
On the first appeal, we were not directly presented with the trial court’s asserted error in upholding the over-all fairness of the transaction. The Appellate Division had yet to reach the merits, a divided court having found the plaintiffs’ action barred by the Statute of Limitations. We reversed that determination by concluding that article 15 of the Real Property Actions and Proceedings Law applied and that the statutory remedy was not time-barred.
Our initial review set forth the essential details of an intricate loan transaction (Howard v Murray, 38 NY2d 695, 697-699), and indicated that the defendant attorney at the very least "got the better of the bargain” (at p 699). The defendant had originally been consulted for tax advice on the plaintiffs’ desired sale or refinancing of their primary capital asset—a lot and commercial building. At the time the property was worth nearly $500,000; it yielded a net annual rental of approximately $15,000. Aided by the plaintiffs’ eagerness to increase this yield on a t&x-free basis during their retirement, coupled with their difficulties in accomplishing this goal through outside channels, the defendant in the end acquired for himself "the right to purchase the property at an amount considerably below its actual value” (at pp 698-699).
The bargain itself was patently one-sided. We could not say at that point and on that basis alone, however, that the underlying agreement was unfair as a matter of law. Instead we remitted the matter to the Appellate Division for appropriate review in light of our preliminary analysis. Having yet to review the merits, it was for that court to first respond to the essence of the fairness problem: "The crucial question is whether the defendant attorney established that the contract 'was made by the client with full knowledge of all material circumstances known to the attorney, * * * and that a reasonable use was made by the attorney of the confidence reposed *421 in him’ ” (at p 699, quoting Whitehead v Kennedy, 69 NY 462, 466).
This classic formulation of the legal standard to be applied on remission assumes a level of scrutiny far "stricter than the morals of the market place” (Meinhard v Salmon, 249 NY 458, 464). Recognition of the duty owed to a client may be strained "from human frailty when confronted with conflicting interests” (Matter of People [Bond & Mtge. Guar. Co.], 303 NY 423, 430), but may not later be demonstrated merely by assertions of good faith or the belief that the client obtained the best terms available at the moment (Wendt v Fischer, 243 NY 439, 443-444). The law "does not stop [merely] to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed” (Munson v Syracuse, Geneva & Corning R. R. Co., 103 NY 58, 74).
When we remitted the case to the Appellate Division, our direction contemplated a meaningful review focusing on the adequacy of disclosure attending the attorney-client transaction. That court, by a divided vote, affirmed the trial court’s assessment, apparently presupposing that the trial court had a full grasp of the underlying agreement and the plaintiffs informed assent to its terms. As our initial analysis suggested, however, it was in this respect that the trial court in the first instance had gone astray.
Illustrative of this was the trial court’s assumption that the agreement was proposed by an attorney who, in attempting to resolve his clients’ financial problem, had himself taken a "calculated risk”. The defendant was presumed to have made a binding commitment to provide the plaintiffs with "a loan of $4,000 per year for life”. In addition, the trial court found that Mrs. Howard was to be entitled to a $9,000 yearly "annuity” if predeceased by her husband. The trial court apparently considered this "final net consideration after taxes” to be "the basis for the reasonableness of the proposal.”
As we noted on the prior appeal, however, these assumptions fail to account for the arsenal of contingencies and interrelating qualifications overflowing from the four documents which comprise the parties’ agreement. The defendant had in reality hedged any risk that the property might decline in value by including terms and cross references allowing him in effect to discontinue loan payments at will without material penalty. If he chose to back out at any point, all prior payments would remain secured under the bond and open- *422 ended second mortgage, and the sums advanced would be repayable to him upon the death of George Howard. At that point, if the defendant chose to adhere to the payment schedule, he would acquire the right to purchase the property at an option price limited to actual advances made under the related bond and option agreements. Although the property would be subject to an outstanding first mortgage, any remaining risks were removed by a provision requiring the plaintiffs to annually reduce this debt by an amount at least equaling the advances made by the defendant.
In addition, if Mrs. Howard were still alive at that point and if the defendant exercised the option, an ostensible "annuity” was to be triggered. But as we previously discerned, "this amount was to be paid solely out of the net income of the property” (Howard v Murray, supra, at p 698). In no event would the presumed $9,000 yearly annuity become a general obligation of the defendant. This typifies the illusory nature of the "calculated risk” assumed to have been borne by the defendant and the benefits erroneously deemed to have been obtained by the plaintiffs.
Given the underlying imbalance of this agreement, it became incumbent upon the Trial Judge to require the defendant attorney to affirmatively demonstrate that his dealings with the plaintiff's were in all respects open, voluntary and fully understood (Matter of Howell, 215 NY 466; Cowee v Cornell, 75 NY 91, 99-101; Whitehead v Kennedy, 69 NY 462, 466, supra). Having apparently misperceived in the first instance the extent of this imbalance, the court’s failure to properly focus on the "crucial question” with the appropriate and necessary scrutiny is understandable. Of course, understanding the error and remedying its effects are altogether separate problems.
At trial, proper emphasis on the critical disclosure issue was obscured by a preliminary question: whether or not an attorney-client relationship existed. Any doubts on this point should readily have been resolved against the defendant, absent proof of a clear and forthright statement to his clients that he was no longer their attorney and that they should obtain outside counsel before continuing any negotiations. This much at least was established without ambiguity: The statement was never made, and any attempt to convey that message apparently fell short. As a result, the defendant could *423 not presume to deal as a principal without fully disclosing the contingencies and over-all imbalance of his proposal.
In combination, these errors in focus and construction have created a record filled with dangling assertions and inconclusive rebuttals. These provide slight assistance in resolving, for instance, whether Mrs. Howard was in fact made aware that her so-called annuity would be unsecured and perhaps unenforceable. Similarly, the record does not adequately reveal whether or not the defendant in fact advised his clients that the second mortgage he was offering would not only secure any monetary advances he would make under a declining payment schedule but would in addition effectively deny the plaintiffs economic flexibility in dealing with their property in the future, even if the defendant were to discontinue the loan payments after the initial advance. And although the record shows preoccupation with the disputed attorney-client issue, documents and testimony bearing on the relevant disclosure problem fail to establish when, if at all, the plaintiffs were finally impressed with the fact that they were no longer dealing with disinterested counsel.
To the end that a record will be provided which will permit the adequate framing and scrutiny of the crucial question behind the plaintiffs’ claim of overreaching, the order of the Appellate Division should be reversed and the case remitted for a new trial.