OPINION OF THE COURT
Wachtler, J.
The plaintiff commenced this action against her former attorneys seeking (1) rescission of a trust agreement and (2) an accounting for mismanagement of the fund. On the defendants’ motion the trial court dismissed the rescission cause of action but the Appellate Division reversed. The defendants appeal by leave of the Appellate Division on a certified question concerning the correctness of its order.
Two primary issues are raised on the appeal: (1) whether the plaintiff has stated a cause of action for rescission and (2) whether the cause of action is barred by the Statute of Limitations. The latter issue also presents a question concerning the applicability of the “continuous treatment” doctrine to an attorney who drafts an agreement and then acts as trustee and attorney under the agreement.
In 1964, when she was a college sophomore, plaintiff received treatment for a mental illness at a New York City hospital. She remained a patient at that facility and a related one until 1967. While in those institutions plaintiff *90 was approached by a family lawyer (not associated with the defendants) and at his urging signed a trust agreement, dated February 5, 1965, in which she virtually surrendered to him all management and control over her inheritance for her lifetime.
Upon her release from the hospital in 1967 the plaintiff retained the defendants to have the 1965 trust agreement set aside. The defendants commenced an action on her behalf in the Supreme Court and, in 1969, succeeded in having the 1965 trust agreement rescinded. In that action the court concluded that the attorney who drafted the agreement and later became the trustee, was chargeable with overreaching. The court noted in particular the plaintiff’s mental condition at the time the 1965 trust agreement was executed as well as her lack of experience in business and legal matters and ignorance of the content and effect of this agreement.
A few months after that decision the defendants drafted a new trust agreement for the plaintiff. This 1969 agreement designates the plaintiff as a cotrustee of the fund. The other trustee is the defendant Theodore Greene, who is a member of the defendant firm but, incidentally, is not related to the plaintiff. As a trustee under the agreement the defendant Greene is empowered to invest up to $100,000 of plaintiff’s funds without her approval; beyond that amount her consent is necessary. He is to receive a fee for his services as trustee, as well as various other payments including 10% of the profits from the sale of trust assets. The agreement also provides that he is authorized to make investments which “are not of the type customarily made by [tjrustees” and his liability for his handling of the fund is “limited solely to * * * willful misconduct, or gross neglect”.
The initial term of the trust agreement was for two years, to be automatically renewed at that point, and at two-year intervals unless the plaintiff gives notice of termination. In 1977 the plaintiff served the notice of termination and commenced this action.
In the first cause of action, seeking rescission of the 1969 trust agreement, the plaintiff claims that the defendants “induced” her to enter the agreement knowing that she *91 was 25 years old, had no business experience or independent advice and relied entirely on the defendants. In the second cause of action, for an accounting, plaintiff claims that the trust assets were mismanaged in various ways, including “self-dealing” by the defendants. It is alleged, for instance, that the defendant firm induced the defendant Greene to invest trust funds in companies which were clients of the defendant firm or in which partners of the law firm had an interest as investors, officers or directors, “without full and adequate disclosure to the plaintiff”.*
In an examination before trial the plaintiff testified that she did not understand the agreement and was under the impression that it was a normal trust and that the trustee would be required to act in a “conventional” and “prudent” manner. The defendants have thus far evaded demands that they appear for an examination before trial. After obtaining numerous adjournments they made this motion to dismiss the first cause of action on several grounds, including the Statute of Limitations. They also contended that the complaint fails to state a cause of action for rescission because “no facts are pleaded which allege that the creation of the Trust was a product of actionable conduct”.
The trial court granted the motion and dismissed the first cause of action on the ground that it was barred by the Statute of Limitations. The court held that the cause of action accrued in 1969 when the trust was created. Applying the six-year Statute of Limitations governing equitable causes of action, the court concluded that the suit commenced in 1977 was untimely.
The Appellate Division reversed and reinstated the first cause of action (80 AD2d 55). The court held that the plaintiff’s right of action did not accrue until she became aware of the alleged breach of the fiduciary relationship and terminated the trust. The court found (p 58) that in “many respects the situation parallels that which gave rise to the doctrine of ‘continuous treatment’ in medical and *92 legal malpractice cases”. The court also found (p 59) that although the plaintiff’s “allegations are general * * * they are sufficient to spell out a cause of action”.
An attorney is not prohibited from entering into a contract with a client. He must do so, of course, with respect to his retainer for legal services (see, e.g., Whitehead v Kennedy, 69 NY 462). And, although it is not advisable, an attorney may also contract with a client with respect to matters not involving legal services, or in addition to legal services (Howard v Murray, 38 NY2d 695, 43 NY2d 417). Thus a contract between an attorney and his client is not voidable at the will of the client.
However, the relationship between an attorney and his client is a fiduciary one and the attorney cannot take advantage of his superior knowledge and position. The basic rule, as stated in an early case (Whitehead v Kennedy, supra, p 466), is that “an attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him”. Under this rule it is not necessary for the client to show that the agreement was obtained by fraud or undue influence on the part of the attorney (Matter of Howell, 215 NY 466) although, of course, that would make the agreement unenforceable if it were proven. Even in the absence of such misconduct the agreement may be invalid if it appears that the attorney “got the better of the bargain”, unless he can show that the client was fully aware of the consequences and that there was no exploitation of the client’s confidence in the attorney (Howard v Murray, 38 NY2d 695, 699, 43 NY2d 417, supra).
In the case now before us the plaintiff alleges, in her complaint and motion papers, that the defendants took unfair advantage of the. attorney-client relationship by purporting to create a trust for her, which in fact granted them powers greater than they would be entitled to have as fiduciaries and relieved them of normal fiduciary liability. She has stated under oath that she did not understand the *93 terms or the effect of the agreement. If proven these allegations should be sufficient to entitle the plaintiff to rescission of the agreement unless the defendants can convincingly show that she was fully and fairly informed of the consequences of the agreement and the special advantages it gave to them. In short, although the complaint alone may be insufficient, on the record as a whole, it appears the plaintiff has a cause of action for rescission (Guggenheimer v Ginzburg, 43 NY2d 268, 274-275).
The Appellate Division also correctly held that the cause of action is not barred by the Statute of Limitations. Initially we note that all parties agree that the six-year Statute of Limitations applies to this action for rescission (CPLR 213, subd 1; Van Dussen-Storto Motor Inn v Rochester Tel. Corp., 63 AD2d 244). The only dispute concerns the point at which the cause of action accrued.
The defendants contend that the statute began to run when they allegedly “induced” the plaintiff to enter the trust agreement. They urge that in this case there is no basis for departing from the general rule that a cause of action accrues when the act complained of occurs. In this connection they have provided an extensive discussion of the differing rules applicable to constructive as opposed to actual fraud (see, e.g., CPLR 213, subd 8; 509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48), on the theory that plaintiff’s reference to inducement “suggests * * * undue influence or constructive .fraud”. However, as noted, the plaintiff’s action for rescission is based on the special rule applicable to contracts between an attorney and his client, which does not rest on a theory of fraud or undue influence.
The defendants also contend that the Appellate Division erred in holding that the cause of action did not accrue until 1977 when the plaintiff terminated her relationship with the defendants. They urge that in reaching this conclusion the Appellate Division improperly applied the continuous treatment doctrine.
The defendants correctly observe that this doctrine was first recognized in personal injury cases involving medical malpractice (Borgia v City of New York, 12 NY2d 151). It *94 was prompted by the practical concern that the plaintiff’s cause of action for malpractice might expire “while he was still a patient receiving care and treatment related to the conditions produced by the earlier wrongful acts and omissions” (Borgia v City of New York, supra, p 156). In a broader sense the rule recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered (Siegel v Kranis, 29 AD2d 477). On this basis the continuous treatment rule has been held applicable to other types of professionals, including lawyers (Siegel v Kranis, supra; Gilbert Props. v Millstein, 33 NY2d 857; When Statute of Limitations Begins To Run Upon Action Against Attorney For Malpractice, Ann., 18 ALR3d 978, 1,000, and Supp).
Contrary to the defendants’ assertions the application of the rule has not been limited to medical malpractice actions by the recent enactment of CPLR 214-a (L 1975, ch 109) codifying the continuous treatment doctrine in medical malpractice cases but making no reference to other types of malpractice actions. The history of the statute shows that the Legislature’s sole concern was to create a special, and more restrictive statute in medical malpractice cases (see, e.g., Simcuski v Saeli, 44 NY2d 442). It was not designed as an over-all recodification or abrogation of judicial principles relating to the timeliness of all types of malpractice actions. Thus in medical malpractice cases the continuous treatment doctrine is now controlled by statute; but with respect to other types of professional dereliction, judicial authority has been left intact.
Nor do we agree with the defendant’s suggestion that the rule should be confined to negligence cases where it originated. The operative principle may also be applicable in other situations, including claims for equitable relief (cf. Grago v Robertson, 49 AD2d 645). A client who entrusts his assets to an attorney for professional assistance often faces the same dilemma as the client who entrusts his case to an attorney for possible litigation. In neither instance can the client be expected, in the normal course, to oversee or supervise the attorney’s handling of the matter, and thus *95 in neither case is it realistic to say that the client’s right of action accrued before he terminated the relationship with the attorney.
The defendants also urge that there has been no continuous representation in this case because, in their view, the creation of the trust and its management are discrete acts. They contend that if the attorney improperly induced the plaintiff to make the trust, his act was complete at that time. His subsequent acts in administering the trust, also alleged to be wrongful, did not serve as a continuing inducement or as an attempt to correct any impropriety that may have occurred in its creation.
It appears to be conceded that the defendants performed legal services on the plaintiff’s behalf by creating the trust and continued to act as her attorney in all legal matters relating to its administration. In addition the plaintiff alleges that this was an integrated plan proposed by the defendants as a solution to her concern over the proper investment of her funds. If these allegations are credited, the defendants’ various activities on plaintiff’s behalf can be seen as part of a course of continuous representation concerning the same or a related problem (cf. Borgia v City of New York, 12 NY2d 151, 157, supra).
 In conclusion we note, of course, that we do not mean to suggest that we credit the plaintiff’s allegations or that she is entitled to rescission. We simply hold that she has alleged enough to state a cause of action which on this record is not barred by the Statute of Limitations.
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.

 On an earlier appeal the firm which drafted the complaint was disqualified from further representing the plaintiff because two of its members had previously been associated with the defendant firm (47 NY2d 447).