Lauriat, J.
The plaintiff, Raytheon Company (“Ray-theon”) brought this legal malpractice action against the defendant attorneys on account of the failure of defendant Neal Tully (‘Tully”) to file answers to interrogatories, which resulted in the dismissal of Raytheon’s fraud and breach of contract claim against McGraw-Edison. Raytheon has now moved for summary judgment on its complaint. The defendants concede Tully’s negligence, but contend that there is a triable issue of fact as to damages, due to the contributory and comparative negligence of Raytheon’s in-house counsel, Michael Halley (“Halley”). For the reasons which follow; the plaintiffs motion is allowed.
BACKGROUND
In the late 1970s, Raytheon negotiated an acquisition of the Speed Queen division of McGraw-Edison. As part of the acquisition, McGraw-Edison agreed to give Raytheon a share of the proceeds of an antitrust class action in which McGraw-Edison was the plaintiff. Further, McGraw-Edison agreed to pay for warranty claims arising from defective ball bearings in certain washing machines manufactured by the Speed Queen Division.
Shortly after its acquisition, Raytheon learned that McGraw-Edison had intentionally misled Raytheon about its relationship with one of Speed Queen’s Middle Eastern distributors, Sheik Mohammed Al-Babtain (“the Sheik”). McGraw-Edison had sold washing machines to the Sheik’s competitor, Al-Attas, at a lower price than that offered the Sheik in violation of an exclusive distributorship agreement. Consequently, the Sheik refused to purchase more machines, and further refused to pay for the machines that he had obtained from McGraw-Edison. Raytheon alleges that it lost approximately $5,500,000 as a result of McGraw-Edison’s actions in the Middle East.[1] During this dispute, McGraw-Edison refused to pay Raytheon its share of the proceeds from the antitrust litigation and further refused to pay approximately $111,000 of the warranty claims.
Attempts to settle the dispute failed and Raytheon retained attorney Tully and his law firm, to prosecute a breach of contract and fraud claim against McGraw-Edison. McGraw-Edison filed interrogatories and a request for production of documents. Although Tully began the preparation of answers by going to the offices of Speed Queen and Raytheon to gather the information, he ultimately did not file the answers. In response to a motion to compel production, the Superior Court ordered Tully to file answers by January 24, 1986. Tully failed to provide the answers and never obtained an extension from McGraw-Edisoris counsel. In February, counsel for McGraw-Edison filed an application for dismissal. The court entered a judgment of dismissal on February 3, 1986.[2] Over the next four years, Tully failed to take any steps to prosecute Raytheon’s claim. On August 14, 1990, Charles Resnick, corporate counsel for Raytheon, discovered that the case had been dismissed while discussing other matters with corporate counsel for McGraw-Ed-ison. After learning of the dismissal, Halley immedi *604 ately contacted Tully, who apparently knew nothing about it. Tully delayed nearly four months before filing a motion for relief from judgment. On June 11, 1991, the court (Houston, J.) denied that motion.
The defendants concede that Tully was negligent and that there is a causal relationship between Tully’s negligence and damage suffered by Raytheon. However, the defendants contend that there exists a genuine issue of material fact as to the extent of that damage, due to the contributory and comparative negligence of Raytheon’s in-house counsel, Halley.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
“A tort plaintiff seeking damages for legal malpractice must establish that: (1) the attorney had a duty toward the plaintiff; (2) the attorney breached the duty by failing to exercise the proper degree of care; (3) the breach proximately caused the plaintiffs injuries.” Glenn v. Aiken, 409 Mass. 699, 708-09 (1991), citing Fishman v. Brooks, 396 Mass. 643, 646-47 (1986).The defendants concede that Tully had a duty to Raytheon, that Tully breached this duly, and that the breach proximately caused Raytheon’s injuries. (Defendant’s Opposition, p. 1.) However, the defendants contend that Halley had a shared duty to ensure that the interrogatories were answered. In support, the defendants rely on Halley’s deposition, in which he states that he was aware that Raytheon had to answer McGraw-Edison’s interrogatories or face sanctions. (Halley Depo., p. 124-27.)
Even assuming arguendo that Halley was fully aware of Tully’s failure to answer the interrogatories, the defendants have not offered, nor has the court found, any cases in which a court has imposed a duty on a client, even one as sophisticated as Raytheon, to oversee an attorney’s work on its behalf. In fact, the Supreme Judicial Court, in adopting the “continuing representation” doctrine,[3] has recognized “that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.” Murphy v. Smith, 411 Mass. 133, 137 (1991), quoting Greene v. Greene, 56 N.Y.2d 86, 93-95 (1982).
While Raytheon employed a staff of lawyers, it chose instead to retain Tully and his firm to prosecute its case against McGraw-Edison. Neither Halley nor any other in-house attorney filed an appearance in that case. Imposing a shared responsibility on Raytheon for Tully’s negligence would only serve to penalize Halley for keeping abreast of this lawsuit[4] and would deter companies in the future from retaining and relying on outside counsel to prosecute their lawsuits. The court therefore declines to expand the obligation of a corporate client by imposing an additional duty to monitor and to manage an outside attorney’s work on its behalf. The court concludes that the defendants’ affirmative defenses of comparative and contributory negligence are untenable and that the plaintiff is thus entitled to summary judgment on its complaint.
ORDER
For the foregoing reasons, the Plaintiffs Motion for Summary Judgment is ALLOWED. The determination of the amount of damages is reserved for a further hearing.

 This figure encompasses the amounts that Raytheon had to spend to mollify Al-Babtain, as well as the difference between the sales Raytheon actually made and the sales that McGraw-Edison led it to believe could be made.

 The court’s records indicate that notice of judgment was served on Raytheon on February 4, 1986.

 The “continuing representation” doctrine provides that the statute of limitations for legal malpractice is tolled until the attorney-client relationship has terminated.

 The defendants’ argument appears to suggest that if Halley had not kept informed of the progress of this case, he would not bear a shared responsibility for Tully’s failure to answer the interrogatories.