OPINION OF THE COURT
Lewis L. Douglass, J.
This is an action for a declaratory judgment to determine whether the plaintiffs or the defendants are the owners of 4200 and 4211 Avenue K, buildings on the opposite sides of the street, which in this litigation are treated as a single building consisting of 191 units.
In the early 1970’s, the buildings were owned by the plaintiff Emmerich Handler whose primary business is investing in real estate. When oil prices increased in the middle 1970’s and the building, therefore, was no longer profitable, he allowed a bank to foreclose. In the late 1970’s, when market conditions changed and the buildings again became potentially profitable, he initiated steps to reacquire the buildings.
Handler’s primary method of operation was to identify potentially profitable buildings and offer various acquaintances the opportunity to invest in those buildings. In order to limit *3 his personal liability, he would take title in the name of a close corporation, sometimes referred to as a paper corporation. None of the ritual associated with organizing corporations was. followed. A lawyer in his office would merely fill out a certificate of incorporation form and submit it to the Secretary of State. That practice was followed in connection with the buildings involved in this litigation in that a contract was to be drawn to show 4200 Avenue K Realty Corp. as the buyer.
Handler then approached one of his acquaintances (Fred Pheffer) and offered him the opportunity of investing $50,000, which was to be used for the down payment. That $50,000 "interest” was eventually assigned to another potential investor (Sheldon Hertz) and then to Jack Walker, a plaintiff herein. The nature of Jack Walker’s interest is one of the issues this court must resolve.
WHAT IS THE NATURE OF JACK WALKER’S INTEREST
The thrust of the defendants’ argument is that since the only capital in the corporation was the $50,000 used for the down payment, the corporation belonged to the person who put up that $50,000, and then to that person’s final assignee, Jack Walker. The logical extension of that argument is that the method for expressing that ownership is to treat Jack Walker as the owner of all the stock in the paper corporation so that if Jack Walker transferred his "interest” in the property, the transfer would be expressed as a transfer of stock.
Plaintiffs argue that since no stock was ever issued, no bylaws were created, no bank accounts were established, and all conversations between Handler, who developed the deal, refer to "investing” in the building rather than "buying” stock in the corporation, that Walker acquired no ownership in stock, but merely acquired the right to share in profits in proportion to his investment.
If the nature of the "interest” is ownership in the stock, then the defendant Weinstock prevails since his claim of ownership is based on a purported transfer of 20% of the stock and a second purported transfer of 80% of the stock by Walker to Weinstock. If, however, the nature of that interest is merely the right to share in profits, the plaintiffs prevail since when Walker purported to transfer, first 20% and then 80% of the stock, he was transferring something he did not own. That is, he purported to transfer stock, but only owned a right to share in profits.
*4 THE MANIFEST INTENT OF THE PARTIES CONTROLS
The payment of $50,000 by the initial investor and the ultimate assignment to Walker was an agreement between Handler, the person who was arranging the deal, the first assignee, and then Walker. There are no stock certificates or written agreement between any of these parties which would establish the terms of that agreement.
In the absence of a clear writing, terms of any agreement are determined by the manifest intention of the parties, that is, what would a reasonably prudent person believe was the intention of the parties at the time the contract was made (Porter v Commercial Cas. Ins. Co., 292 NY 176). Here, the facts surrounding the investment are that Handler discovered the deal, Handler was in the business of syndicating real estate, and Handler was an expert. Handler hired the lawyers and, through the past 10 years of litigation, all parties have identified Handler as the moving force behind the deal. Indeed, Weinstock, during his testimony, would shout "Handler’s behind the whole thing,” "Walker is a pawn.” Although these outbursts were caused by emotional stress and designed to portray Handler as an evil force, they are also evidence that Weinstock always knew this was Handler’s deal.
Walker’s background is that he graduated from dental school, never practiced, and spent his active years in a watch business started by his father-in-law. From time to time, he invested in real estate deals, usually through Handler’s law firm. He attempted to operate his own housing complex, but that ended with him having to repay large amounts that he misappropriated. It is clear from his background and demeanor on the stand that Walker had become involved with the lawyers in this transaction, all of whom were tougher and more knowledgeable than Walker. He was a novice in over his head.
Against this background, it is totally improbable that the manifest intent, that is, the intent that would be ascertained by a third party viewing this situation, would be that the parties intended that Handler, the real estate expert who discovered the deal, would turn it over to Walker, the novice, and end up with no ownership position.
I conclude, therefore, that where a person invests in real estate which is to be syndicated, that investor acquires no title to the real estate or to the shares in the stock of a corporation which may hold title to such real estate, but merely acquires a *5 right to become a passive investor with the right to share in profits or losses in proportion to his investment, but no right to manage, sell, or transfer the stock of any corporation in which title may be held.*
Even assuming arguendo that Walker had the authority to transfer stock, the transfers must be set aside as unconscionable.
Weinstock’s claim of ownership of the stock in the corporation is based upon two purported transfers to him by Walker: first for 20%, and second for 80%.
THE PURPORTED 20% TRANSFER
According to Weinstock, he had an oral agreement with Walker that if he would handle the appeal from a trial seeking to compel the original owner to convey title to the Handler group, his fee would be 20% of the stock in the corporation. This was much like a contingent fee. If he won, he would be a 20% owner of a building worth over $4,000,000 with a cash flow of $260,000 a year. If he lost, he had nothing.
Although that might be viewed as an extraordinarily high fee, in view of the fact that in the first trial the verdict was against Handler and Walker, and Weinstock was being asked to get that verdict reversed and handle a second trial, 20% of the stock, standing alone, does not seem so unconscionable as to declare the contract void. It does, however, become unconscionable when the agreement is coupled with the circumstances surrounding the purported second transfer of 80% of the stock as discussed here.
THE PURPORTED 80% TRANSFER
Weinstock argues that he acquired full ownership in 4200 Avenue K Realty Corp. because Walker later transferred the balance of what he owned, that is, 80%, to Weinstock.
This 80% transfer arises out of the fact that Walker had commenced a fraud action against Weinstock, alleging that
*6 Weinstock had. signed Walker’s name to a contract of sale to a piece of real estate unrelated to this litigation without Walker’s permission. Weinstock acknowledges that he signed Walker’s name but argues that Walker gave him permission to sign his name. He, therefore, threatened to sue Walker for libel, slander, and abuse of process because of Walker’s false statement that he did not give Weinstock permission to sign his name. The terms of this settlement agreement are extraordinary. Under this settlement agreement, Walker agrees to give his lawyer, Weinstock, 80% of a building worth $4,000,000. Not only is the amount extraordinary in settlement of a nebulous fraud / libel / slander lawsuit, arising out of a dispute over a real estate transaction, but Walker had a powerful defense. Prior to the dispute based on the fraud charges, Walker transferred property to Weinstock and Walker made a $50,000 profit. That deed was never filed. The contract where Weinstock signed Walker’s name was used to transfer the property to third parties at a price which allowed Weinstock and lawyers associated with him to earn somewhere between $150,000 and $200,000. Without passing judgment on this dispute, it is clear that this scenario would have a tremendous impact on any jury, particularly when the jury would hear that Weinstock admitted that he signed Walker’s name to a contract. Moreover, Weinstock sustained no measurable damages since the only evidence that Walker discussed the alleged unauthorized signature with persons other than the lawyers involved in the real estate deal is Weinstock’s claim that mutual but unidentified acquaintances called him to say that Walker had accused him of signing his name without permission. Under these circumstances, settlement of the alleged fraud/libel lawsuit for 80% of the stock in a building worth $4,000,000 is unconscionable and must be declared void, particularly since it is a contract between a lawyer and his client, a contract which requires the highest degree of scrutiny (Greene v Greene, 56 NY2d 86).
As mentioned before, the transfer of 20% of the stock as a fee to Weinstock, standing alone, was not so unconscionable as to be declared void. The gross unfairness surrounding the 80% transfer, coupled with another transaction where Walker makes $50,000 while lawyers associated with Weinstock make $150,000 to $200,000, taint the 20% transfer and it, too, must be set aside.
*7 EQUITY
This proceeding is one in equity where the overwhelming command of the law is to do justice (Tompers v Bank of Am., 217 App Div 691, 694). Justice would be deeply offended if this court were to condone the following scenario. A real estate investor (Handler) finds a profitable real estate deal and brought in another investor (Walker). The investor (Handler) then finds it necessary to retain a lawyer (Weinstock) to bring a lawsuit to compel specific performance. During and subsequent to the trial, the second investor (Walker), known by all of the participants in the transaction to be a novice in real estate, signs a series of documents which purportedly transfers title to the building to the lawyer (Weinstock). And, during the four years following the trial, the investor (Handler) and the second investor (Walker) spend over $350,000 while the lawyer (Weinstock) does not spend one dime, but now claims he is the owner of the building worth $4,000,000. That is a circumstance which gives rise to the growing public distrust of the legal profession. That circumstance is so extraordinary, so violative of the spirit of the canons of ethics, the inescapable conclusion is that even if the stock transfers were otherwise valid, they would be set aside as the consequences of overreaching and undue influence by the lawyer (Weinstock) over his client (Walker).
I find and declare that: (1) Emmerich Handler at all times throughout the existence of 4200 Avenue K Realty Corp. was the owner of any stock in said corporation; (2) Emmerich Handler was at all times the lawful owner of premises 4200 Avenue K; (3) after title to premises 4200 Avenue K was taken in the name of 4200 Avenue K Realty Corp., the subsequent transfer to 4200 Avenue K Assoc, was lawful; (4) Israel Weinstock has no claim whatsoever to premises 4200 and 4211 Avenue K located in the County of Kings.

 Although events subsequent to the making of a contract are not conclusive evidence of the intent of the parties at the time of the making of the contract, credence is given to this finding of manifest intent when the parties act in accordance with the manifest intent as found by the court. Here, after acquiring the building, Handler eventually created a limited partnership, filed Federal tax returns, and Walker appeared on those returns, not as a principal, but consistent with the view that no one ever intended Walker would be anything more than a passive investor; he appeared on those returns as a limited partner.