Edward C. KING, Plaintiff–Appellant,

v.

Lawrence A. FOX, Esq., Defendant–
Appellee,

Legal Vision, Inc., Lerner, Lapidus &
Franquinha, P.C., Defendants.

Docket No. 00–9424.

United States Court of Appeals,
Second Circuit.

Jan. 29, 2002.

David K. Bergman, Frydman & Bergman, New York, NY, for plaintiff-appellant.

William J. Davis; Henry H. Korn, Heath J. Rosenthal, of counsel, Scheichet & Davis, P.C., New York, NY, for defendant-appellee.

Present CABRANES, STRAUB, and PARKER, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is VACATED and REMANDED for further proceedings.

Plaintiff Edward C. King appeals from the District Court's summary judgment in favor of defendant Lawrence A. Fox dated March 9, 1999. Judgment was entered March 11, 1999, and this appeal followed.

From 1972 to 1975, Edward C. King was a member of the rock band Lynyrd Skynyrd ("the Band"). King left the Band in 1975.

In 1974, King and the Band had entered into various written agreements with MCA Records, Inc. ("MCA") which provided for the payment of royalties. By written agreement dated November 26, 1976, King retained attorney Lawrence A. Fox to pursue King's rights to royalites from MCA stemming from his association with the Band. King and Fox had a fee arrangement whereby Fox would receive one-third of "any money recovered from the [Band and Ronnie Van Zant] ... by way of settlement, trial, judgment or other method."

Fox represented King's interests in connection with the pursuit of royalties from MCA, including the commencement of two lawsuits in New York, one in 1976 and one in 1982, against MCA which were respectively settled in 1978 and 1989. The terms of the settlement of the 1976 lawsuit had MCA pay King a sum of money, and required it to make payment of future royalties and provide royalty statements. One third of the settlement amount was paid to Fox's then law firm, and the balance was remitted to King pursuant to their agreement. Thereafter, royalty payments from MCA were remitted to Fox, who deposited them into his firm's escrow account and then remitted two-thirds thereof to King and paid the one-third balance to Fox's firm. In the normal course, Fox sent King a cover letter with the payments, making specific reference to the retention of one-third by Fox's firm. This practice continued uninterrupted from 1979 until 1995.[1]

---

1. In 1987, Fox agreed to waive his right to

King's writer's royalties and accordingly did

In the late 1970s, John K. Groon, an attorney representing King, reviewed both the settlement of the first lawsuit against MCA and the scope of the one-third fee agreement between Fox and King. After reviewing the materials that Fox had forwarded on October 18, 1978, Groon requested a statement from Fox, who replied by letter dated October 23, 1978:

> The one third recovery we receive includes all royalty money [King] is entitled to resulting from his involvement with [the Band] as that was our agreement. Please ask [King] to call me if he disagrees, but you can verify out understanding with Janet [King's then wife] who participated in several of our conversations.

On April 18, 1988, Fox sent King a letter which King had requested for the purposes of an IRS audit that he was undergoing. Fox stated:

> In connection with your IRS audit, this is to confirm that we have charged you one-third of all monies received from MCA as our legal fee for services rendered to you in this matter. The amount that you have received[ ] should be precisely two-thirds of the amount of the royalty statement.

After 1990, Fox continued depositing royalty checks in his firm's escrow account and distributing the funds to King as before. One of the questions raised by this litigation is whether Fox and King had a continuous course of representation during the period after the settlement of the second MCA lawsuit. Fox contends that they did not. He argues that he only disbursed royalty funds as he received them, and he thus acted as no more than an escrow agent. Several factors belie Fox's assertions and, since the District Court dismissed the complaint on summary judgment, we must draw all inferences in King's favor. First, King and Fox never signed an escrow agreement memorializing their relationship. (There was an escrow agreement with third party Abelese Clark and Osterberg, but that agreement only covered twenty percent of the settlement recovery, designated the "Escrowed Funds" by the stipulation of settlement.) Moreover, King and Fox presented themselves to MCA as if Fox continued as King's legal representative, ready to bring suit should MCA waver in its commitment to the settlement agreement. King directed MCA to direct all contact, royalties *and correspondence,* to Fox. On January 22, 1990, Fox himself evinced his understanding that he would continue to act as King's attorney in dealing with MCA even after the two suits had settled. He promised to "see this through even though I may have to begin yet another lawsuit" and talked about how MCA is "always seeking some edge"

Beginning in April 1995, King has received royalty payments relating to the Band directly from MCA, and has not remitted to Fox his one-third share thereof.

On June 4, 1997, King filed suit against Fox for taking a one-third share of King's royalties, alleging claims for breach of fiduciary duty, unjust enrichment, undue influence, conversion, and violation of the New York Judiciary Law § 487. King also contended that the November 26, 1976 retainer fee agreement was void because it was unconscionable and unenforceable.

Fox moved for summary judgment on May 8, 1998. On March 11, 1999, the District Court granted that motion because it found that the statute of limitations on King's claims had run. King timely filed this appeal.

not keep a portion of such royalties after 1987.

"We review de novo a district court's grant of summary judgment to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *United States v. Gordon*, 78 F.3d 781, 784 (2d Cir.1996). On appeal, King raises four arguments for why the statute of limitations has not run on his claims. As we explain below, three of those arguments are without merit. Regarding the fourth ground (the continuous representation rule), we conclude that King raised a genuine issue of material fact as to whether the statute of limitations had run, thus precluding a grant of summary judgment.

■■■ First, King asserts that his claims are not time-barred because Fox has allegedly committed a continuing tort each time Fox took one-third of the MCA royalty payments from King. Under the doctrine of continuing tort, a plaintiff who asserts a tort claim may rely on the final, actionable event as the conduct comprising the tort for statute of limitations accrual purposes. *Shannon v. MTA Metro North R.R.*, 269 A.D.2d 218, 704 N.Y.S.2d 208, 209 (1st Dep't 2000). However, in *Sporn v. MCA Records*, 58 N.Y.2d 482, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (N.Y.1983), the New York Court of Appeals limited the doctrine of continuing tort to claims of trespass, excluding those of conversion. It illustrated the difference as follows:

> If ... the defendant merely interfered with the plaintiff's property ... then the complaint will be properly construed as an action to recover for trespass. Only then would it be necessary to consider the applicability of continuing trespass concepts. If, however, the conduct ... amounts to the destruction or taking of the property, then the action is properly deemed one for conversion.

*Id.* at 488, 462 N.Y.S.2d 413, 448 N.E.2d 1324. Indeed, in *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir.1992), we recognized that the continuing wrong tolling rule "is based primarily upon the impracticability and unfairness of requiring a plaintiff to institute his action before he can predict his damages." *Id.* at 1039.

The continuing tort theory does not apply in the instant case because the plaintiff's action is one for conversion and not for trespass. The plaintiff notably framed his complaint as one for conversion. In addition the wrongful appropriation of money he asserts more closely resembles conversion or "taking of [one's] property" than "interfer[ence] with [it]." *Sporn*, 58 N.Y.2d at 488, 462 N.Y.S.2d 413, 448 N.E.2d 1324. Moreover, tolling the instant claims would not serve the continuing tort policy because by 1988, at the latest, King could predict his alleged damages with ease and precision as one-third of his royalty payments from MCA. Accordingly, the continuing tort theory fails.

■■■ Second, King contends that, given the defendant's misrepresentations, the statute of limitations should have been tolled based on the doctrine of equitable estoppel. But equitable estoppel only works to toll the statute of limitations if the plaintiff is induced by fraud or deception to refrain from filing a timely action, and the plaintiff demonstrates that he exercised due diligence in pursuing the action. *Simcusk v. Saelli*, 44 N.Y.2d 442, 449–50, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978). Here, even if the conduct King attributes to Fox constituted deception which induced King not to file a timely action, it should have been eminently clear to King by, at the very latest 1988, when he received the tax letter from Fox, that Fox was taking one-third of all his royalty payments from MCA. Thus, King's nine

year delay (at a minimum) before filing his complaint showed insufficient diligence to permit equitable tolling.

█ Likewise, we find no merit in King's assertion that the statute of limitations for breach of fiduciary duty never expired. A claim for breach of fiduciary duty based on fraud does not accrue until the plaintiff's actual or constructive discovery of the facts constituting the fraud. *See Elghanayan v. Victory*, 192 A.D.2d 355, 596 N.Y.S.2d 35 (1st Dep't 1993). But as explained above, the fraud which King alleges stems from Fox's taking part of King's royalties from MCA. Since these facts should have been clear to the plaintiff by 1988 or earlier, King's claim for breach of fiduciary duty began and expired well before he brought the instant lawsuit.

█ Although King's first three reasons for tolling the statute of limitations are without merit, King has presented evidence in support of his fourth argument in favor of tolling the statute of limitations— namely, the continuous representation rule. Since, we conclude that King raised a genuine issue of material fact as to whether Fox continuously represented King into the statute of limitations period, we vacate the summary judgment and remand for further proceedings.

King argues that the District Court should have applied the continuous representation rule. In *Greene v. Greene*, 56 N.Y.2d 86, 451 N.Y.S.2d 46, 436 N.E.2d 496 (N.Y.1982), the New York Court of Appeals found that the statute of limitations did not bar the plaintiff's action because the defendants created a trust for the plaintiff and continued to act as her attorney in all legal matters relating to its administration. *Id.* at 95, 451 N.Y.S.2d 46, 436 N.E.2d 496. The District Court found that after 1990 Fox performed no legal services for King, and that his disbursal of funds to Fox was inadequate to constitute continuous representation. Citing *Lazzaro v. Kelly*, 87 A.D.2d 975, 450 N.Y.S.2d 102, 104 (4th Dep't 1982), for the proposition that escrow agents are not in a continuous relationship for the purposes of the statute of limitations, the court concluded that Fox's routine remittance of payments to King was insufficient to toll the statute of limitations.

We conclude that King has raised a genuine issue of material fact as to whether Fox continued to represent him, thus tolling the statute of limitations on King's claim. Drawing all inferences in King's favor, the evidence tends to prove that Fox acted as King's lawyer through April 1995. Both King and Fox evidently felt that MCA could not be trusted, and that King's continued representation was necessary to prevent MCA from unraveling the settlements with King. This conclusion is supported by King's representation to MCA to direct all correspondence (and not just royalties) to Fox and further supported by Fox's January 22, 1990 letter in which he promised to bring additional lawsuits should MCA breach its obligations. The absence of an explicit escrow agreement undercuts Fox's assertion that, after the final settlement, he acted as no more than King's escrow agent.

For the reasons set forth, we VACATE the judgment of the District Court and REMAND for further proceedings.