869 P.2d 821

**Mayme BRUNACINI, and Brunacini Appliance Company, Inc., Plaintiffs–Appellees,**

v.

**Robert G. KAVANAGH, and Threet and King, Defendants–Appellants.**

No. 14638.

Court of Appeals of New Mexico.

Dec. 16, 1993.

Certiorari Denied Feb. 4, 1994.

Briggs F. Cheney, Michael P. Clemens, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellants.

David B. Martinez, William J. Friedman, Eaton, Martinez & Hart, P.C., Albuquerque, for plaintiffs-appellees.

## OPINION

DONNELLY, Judge.

This interlocutory appeal raises the issue of whether the trial court erred in denying Defendants' (the Law Firm's) motion to dismiss the legal malpractice action brought by Mayme Brunacini and Brunacini Appliance Company (Plaintiffs). The sole question presented on appeal is whether Plaintiffs' claim of legal malpractice was a compulsory counterclaim that was required to be raised in the Law Firm's prior action against Plaintiffs to recover legal fees. We reverse the trial court's order denying the motion to dismiss and hold that Plaintiffs' malpractice claim was a compulsory counterclaim within the contemplation of SCRA 1986, 1–013(A) (Repl. 1992), and that the malpractice claim is barred in the present action under the doctrine of res judicata.

## FACTS

Plaintiffs employed the Law Firm to review a contract of employment with a third party to determine its enforceability. Robert Kavanagh, a member of the Law Firm, reviewed the employment contract and, on November 13, 1989, prepared an opinion letter that stated, in part: "[I]t is my legal opinion that [the written agreement] has no effect to bind the corporation [Brunacini Appliance Company]."

Based on the opinion letter and the advice given by Kavanagh, Plaintiffs terminated the employment of the third party. Thereafter, the third party filed a lawsuit against Plaintiffs for breach of the employment contract, and the Law Firm was retained to defend Plaintiffs in the action. Following a jury trial, the jury returned a verdict finding that Mayme Brunacini was not liable individually for any damages resulting to the third party, but that Brunacini Appliance Company breached the employment contract. The jury awarded damages in favor of the third party and against Brunacini Appliance Company in the amount of $120,067. Judgment was entered against the corporation on May 21, 1991.

Thereafter, Plaintiffs filed an appeal from the judgment. On October 25, 1991, while the appeal was still pending, the Law Firm filed a lawsuit against Plaintiffs to collect its legal fees for its services in representing Plaintiffs in the breach of contract action.

After the Law Firm filed its suit to collect legal fees, Plaintiffs employed a new attorney to defend against such claim and also to represent them in their pending appeal. On May 16, 1992, Plaintiffs, with the advice of their new attorney, entered into a stipulated judgment settling the Law Firm's suit for legal fees. On June 19, 1992, our Supreme Court, in an unpublished decision, denied Plaintiffs' appeal and affirmed the jury verdict in the breach of employment contract case.

Approximately four and one-half months later, on November 5, 1992, Plaintiffs brought a legal malpractice action against the Law Firm and Kavanagh, alleging that Defendants were negligent in the issuance of the Law Firm's opinion letter and that they negligently failed to warn and advise Plaintiffs of the foreseeable risk and financial exposure that could arise from the Law Firm's interpretation and construction of the disputed contract.

The Law Firm filed a motion to dismiss the malpractice action, arguing that the malpractice claim was a compulsory counter-

claim to the action for legal fees and that the judgment entered in the legal fees case was res judicata, thus barring any subsequent attempt to litigate the malpractice claim. Following a hearing on February 23, 1993, the trial court denied the motion to dismiss.

## RES JUDICATA

The Law Firm argues that the trial court erred in failing to grant its motion to dismiss. The Law Firm contends that under SCRA 1–013(A) and *Bennett v. Kisluk,* 112 N.M. 221, 814 P.2d 89 (1991) (Franchini, J., and Sosa, C.J., dissenting), Plaintiffs' claim for legal malpractice was a compulsory counterclaim, and Plaintiffs' failure to timely file such claim bars any subsequent assertion of such claim. SCRA 1–013(A) states, in applicable part, that a party is required to set forth as a counterclaim:

> [A]ny claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

■ Under SCRA 1–013(A), the affirmative defense of res judicata is available where an issue has been expressly raised or is logically related to the subject matter of the prior litigation. *Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 435–36, 733 P.2d 1316, 1318–19 (1987). Generally, the defense of res judicata will preclude the later assertion of a claim where the party seeking to assert such claim had a full and fair opportunity to litigate the issue in the prior action, the parties are the same or in privity with another, and the causes of action logically are related. *See id.; see also First State Bank v. Muzio,* 100 N.M. 98, 101–02, 666 P.2d 777, 780–81 (1983); *Miller v. Miller,* 83 N.M. 230, 234, 490 P.2d 672, 676 (1971); *Bentz v. Peterson,* 107 N.M. 597, 600, 762 P.2d 259, 262 (Ct.App.1988). *See generally* Restatement (Second) of Judgments § 13 (1982).

As observed by 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 17.12, at 47 (3d ed. 1989), the defense of res judica-ta may arise in legal malpractice litigation and:

> The most common context of the defense arises out of litigation for legal fees. Res judicata [exists] where a client unsuccessfully [raises] the issue of malpractice in the attorney's action for fees, even though the client [does] not or [can]not cross-claim for affirmative relief. *The failure to raise the issue of legal malpractice by a compulsory counterclaim can also be a bar.* Similarly, a client who [allows] a default to be entered against him by his former attorneys in their action to recover legal fees [can]not later urge malpractice as a defense to an action to collect the judgment.

*Id.* at 50 (emphasis added) (footnotes omitted).

### A. Standard of Review

■ In reviewing an order denying a motion to dismiss under SCRA 1986, 1–012(B)(6) (Repl.1992), we assume as true all facts that are well pleaded. *Fasulo v. State Farm Mut. Auto. Ins. Co.,* 108 N.M. 807, 808, 780 P.2d 633, 634 (1989). A motion to dismiss is properly granted only when it appears that a plaintiff cannot recover under any state of facts provable under its claim. *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978); *see also Apodaca v. Unknown Heirs,* 98 N.M. 620, 622–24, 651 P.2d 1264, 1266–68 (1982) (defense of the statute of limitations may be raised on a motion to dismiss where it is clear from the face of the pleadings that a plaintiff's action is barred); *City of Roswell v. Chavez,* 108 N.M. 608, 611, 775 P.2d 1325, 1328 (Ct.App.) (determination of timeliness of claim as a matter of law is only proper where there is no room for reasonable difference in opinion), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989).

### B. New Mexico Precedent

The Law Firm contends that our Supreme Court, in *Bennett,* adopted the general rule that a claim for legal malpractice is a compulsory counterclaim that must be asserted by a defendant in a civil action brought by his or her former attorneys to collect unpaid legal

fees. Plaintiffs contest this interpretation and argue that the reference by our Supreme Court, in *Bennett*, indicating that a cause of action for legal malpractice is a compulsory counterclaim to an action for collection of legal fees, is dicta and is not controlling in the instant case. We disagree with Plaintiffs' reading of *Bennett*.

In *Bennett* our Supreme Court addressed the issue of whether an action for malpractice, intentional infliction of emotional distress, and misrepresentation brought by a plaintiff against her former attorney in a personal injury action was barred by the doctrine of res judicata. The attorney argued, among other things, that his motion for legal fees in the settlement of his former client's personal injury case had the effect of making him an intervenor in the action, and that the malpractice claim was a compulsory counterclaim to his motion. Our Supreme Court disagreed with this contention, stating:

> While the nature of the claim to attorney fees is related substantially enough to [the attorney's] efforts to effect the settlement and to his discharge without cause so as to have given rise to a compulsory counterclaim for malpractice to a *complaint for collection of professional fees*, we are hesitant to accord res judicata effect to all issues and claims that might have been raised in response to a *motion* for fees.

*Bennett*, 112 N.M. at 224, 814 P.2d at 92.

Our Supreme Court further observed that whether the plaintiff's claim for malpractice was a compulsory counterclaim to the attorney's motion for fees depends on whether the attorney was an " 'opposing party' " within the meaning of SCRA 1–013(A), and that:

> An "opposing party" must be one who asserts a claim against the prospective counterclaimant in the first instance. Here, we hold that [the attorney], by virtue of his motion for fees, was not in the adversarial relationship with [the former client] that would trigger the compulsory counterclaim rule and its attendant res judicata effect.

*Bennett*, 112 N.M. at 224, 814 P.2d at 92.

The Supreme Court, in *Bennett*, while articulating the general rule that an action for legal fees triggers a compulsory counterclaim for malpractice where the two claims arise out of the same general transaction, noted that a *motion* for legal fees, unlike a complaint seeking such relief, does not create a sufficient adversarial relationship to invoke the defense of res judicata. *See also Apodaca*, 98 N.M. at 623, 651 P.2d at 1267 (motion is not a responsive pleading).

In the present case, unlike the situation in *Bennett*, the Law Firm's action against Plaintiffs for collection of its legal fees placed it in an adversarial position with Plaintiffs as "opposing parties" within the contemplation of SCRA 1–013(A). Unless SCRA 1–013(A) is shown not to apply to the action brought by the Law Firm to collect its legal fees, or the action is shown to fall within an exception to SCRA 1–013(A), Plaintiffs were required to assert as a counterclaim any claim that the Law Firm's services rendered on their behalf gave rise to an actionable claim of legal malpractice. *See Slide–A–Ride*, 105 N.M. at 435, 733 P.2d at 1318 (purpose of SCRA 1–013 is to avoid multiplicity of actions and resolve in single action all disputes arising out of common matters); *Evans Fin. Corp. v. Strasser*, 99 N.M. 788, 790, 664 P.2d 986, 988 (1983) (requirement that counterclaim be filed under SCRA 1–013(A) is mandatory); *see also Levin v. Hindhaugh*, 167 Ariz. 110, 804 P.2d 839, 840 (Ariz.Ct.App.1990) (compulsory counterclaims are subject to principles of res judicata).

Plaintiffs also argue that *Lowe v. Bloom*, 112 N.M. 203, 813 P.2d 480 (1991), is factually similar to the instant case and supports their contention that a claim for legal malpractice is not a compulsory counterclaim to a complaint for legal fees. In *Lowe* the party complaining of legal malpractice did not file an answer to the action for legal fees and the complaint was dismissed without prejudice. *Id.* at 204, 813 P.2d at 481. In the present case, however, Plaintiffs filed an answer to the Law Firm's action for legal fees and agreed to a stipulated judgment. It was when Plaintiffs filed their first pleading in the Law Firm's action for legal fees that their claim for legal malpractice became compulsory. *See* SCRA 1–013(A) ("A *pleading* shall state as a counterclaim any claim which

*at the time of serving the pleading* the pleader has against any opposing party[.]") (emphasis added); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1411, at 80 (2d ed. 1990) ("[T]he party need not assert a counterclaim that has not matured at the time he serves his pleading.") (footnote omitted). Therefore, *Lowe* is factually distinguishable from the present case.

Thus, we conclude that neither *Bennett* nor *Lowe* support Plaintiffs' contentions that their claim of legal malpractice was not a compulsory counterclaim to the Law Firm's action to collect legal fees.

### C. *Does Claim Arise Out of Same Transaction?*

Plaintiffs argue that even if *Bennett* and *Lowe* are read as recognizing that a cause of action for legal malpractice is ordinarily a compulsory counterclaim in a suit for legal fees, they were not required in the instant case to file a counterclaim for legal malpractice in the Law Firm's action for legal fees, because the Law Firm's action to collect legal fees did not seek to recover compensation for the same legal services that Plaintiffs now claim were negligently performed.

Plaintiffs argue that their action for malpractice is based on the allegedly negligent opinion letter issued by Kavanagh. Plaintiffs point out that Kavanagh was fully paid for this service, and that it was not part of the Law Firm's action for legal fees. The Law Firm's action, on the other hand, was for fees incurred in defending Plaintiffs against the lawsuit brought by the third-party employee; a lawsuit that was the direct result of Plaintiffs' reliance on the allegedly negligently drafted opinion letter. We find this argument unpersuasive.

New Mexico has adopted a logical relationship test to determine whether a claim is compulsory under SCRA 1–013(A). *Heffern v. First Interstate Bank,* 99 N.M. 531, 534, 660 P.2d 621, 624 (Ct.App.1983). A logical relationship will be found if both the claim and the counterclaim have a common origin and subject matter. *Slide–A–Ride,* 105 N.M. at 436, 733 P.2d at 1319. In the present case the claim for malpractice and the claim for legal fees have a common origin (the opinion letter) and a common subject matter (the performance of legal services). The two claims are logically related, and, absent some other consideration, the claim for legal malpractice was a compulsory counterclaim to the Law Firm's claim for legal fees.

### D. *Privity*

Plaintiffs also argue that their legal malpractice claim was not a compulsory counterclaim in the action brought by the Law Firm for the collection of legal fees, because Kavanagh was not named as a party in the suit to collect legal fees. Plaintiffs contend that the defense of res judicata is limited to situations involving identical parties or their privies. Plaintiffs are correct that the defense of res judicata requires a showing that there is an identity of parties or that privity existed between the parties in the first action and the parties named in the second action. *See Waksman v. City of Albuquerque,* 102 N.M. 41, 43, 690 P.2d 1035, 1037 (1984). In the instant case, however, it is clear that Kavanagh was in privity with the Law Firm and was a member or employee of the firm at the time he performed the legal services that gave rise to Plaintiffs' allegations of legal malpractice. *See Bentz,* 107 N.M. at 600, 762 P.2d at 262 (privity exists when an individual is so identified in interest with another that he represents the same legal right).[1]

### E. *Ripeness or Maturity of Counterclaim*

Plaintiffs additionally assert that the trial court's ruling denying the Law Firm's motion to dismiss was proper because Plaintiffs' legal malpractice claim had not yet ripened or matured at the time the Law Firm filed its suit to recover legal fees. Plaintiffs reason that until the issues involved in the breach of the employment contract case were finally

---

**1.** Count V of Plaintiffs' malpractice complaint alleged, among other things, that "[a]t the time of the ... negligent acts on the part of Defendant [Kavanagh], he was employed as an agent, servant or partner in ... [the Law Firm]...."

decided on appeal, their counterclaim had not yet matured so as to give rise to a compulsory counterclaim.

The question of when a cause of action for legal malpractice is deemed to have matured for purposes of determining whether the compulsory counterclaim rule applies presents an issue of first impression in New Mexico.

Courts in other jurisdictions that have considered the analogous issue of when the statute of limitations for legal malpractice begins to run have reached divergent results. Many of those decisions appear to have been influenced by specific statutory provisions or court rules.[2] At least three different rules have been recognized: (1) The "occurrence rule" (statute of limitations for legal malpractice begins to run upon the occurrence of essential facts giving rise to the action, regardless of when the facts are discovered). *See, e.g., Cotton v. Mosele,* 738 F.2d 338, 338 (8th Cir.1984) (per curiam); *McConico v. Romeo,* 561 So.2d 523, 525 (Ala.1990); *Chapman v. Alexander,* 307 Ark. 87, 817 S.W.2d 425, 425–26 (1991); *McCoy v. Lyons,* 120 Idaho 765, 820 P.2d 360, 367 (1991). (2) The "discovery rule" (statute of limitations for legal malpractice does not commence until the client knows or reasonably should have known of the essential facts giving rise to the action). *See, e.g., Worton v. Worton,* 234 Cal.App.3d 1638, 286 Cal.Rptr. 410, 416 (1991), *review denied* (Jan. 19, 1992); *Drake v. Simons,* 583 So.2d 1074, 1075 (Fla.Dist.Ct. App.), *review denied,* 592 So.2d 682 (1991); *Sherbeck v. Schaper,* 232 Neb. 754, 442 N.W.2d 364, 368 (1989); *Grunwald v. Bronkesh,* 131 N.J. 483, 621 A.2d 459, 464 (1993); *Melgard v. Hanna,* 45 Or.App. 133, 607 P.2d 795, 796 (1980); *Quinn v. Connelly,* 63 Wash. App. 733, 821 P.2d 1256, 1258 (1992). (3) The "damage rule" (statute of limitations for legal malpractice accrues when the act of malpractice occurs and actual damage has resulted). *See, e.g., K.J.B., Inc. v. Drakulich,* 107 Nev. 367, 811 P.2d 1305, 1306 (1991) (per curiam); *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 815–16 (1991).

New Mexico has adopted the "damage rule" as the means for determining the analogous issue of when the statute of limitations begins to run for a cause of action for legal malpractice. *See Jaramillo,* 93 N.M. at 434, 601 P.2d at 67. In *Jaramillo* our Supreme Court held that the statute of limitations in a cause of action for legal malpractice commences when both elements of a two-part test have been satisfied, namely: (1) when the harm or damage is ascertainable or discoverable by the injured party; and (2) when actual loss or damage has occurred to the client. *Id.* The *Jaramillo* Court also observed that the plaintiff in that case was in a position to ascertain or discover the harm or damage to her each time that she changed attorneys. *Id.*

■ Consistent with the rule adopted by our Supreme Court in *Jaramillo,* we hold, as a matter of law, that Plaintiffs' cause of action for legal malpractice accrued when the judgment was entered against Brunacini Appliance Company in the employment contract dispute. At that point Plaintiffs were aware that the Law Firm's legal advice had been determined to be erroneous and they had been damaged. While there was still a possibility both those decisions could be reversed on appeal, an unreversed judgment is final between the parties as to all matters to which the judgment relates. *Bank of Santa Fe v. Honey Boy Haven, Inc.,* 106 N.M. 584, 586, 746 P.2d 1116, 1118 (1987).

■ Although the time when a party is deemed to have discovered, or reasonably should be held to have discovered the malpractice of an attorney, is generally a question of fact, nevertheless, where the undisputed facts show that Plaintiffs knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law. *See Morris v. Geer,* 720 P.2d 994, 997 (Colo.Ct. App.), *cert. denied* (June 9, 1986); *Grunwald,* 621 A.2d at 465; *see also Melgard,* 607 P.2d at 796.

**2.** New Mexico does not have a specific statute of limitations solely applicable to legal malpractice actions. Instead, NMSA 1978, Section 37–1–4 (Repl.Pamp.1990) is applicable to legal malpractice claims. *See Jaramillo v. Hood,* 93 N.M. 433, 434, 601 P.2d 66, 67 (1979).

In the record before us, the Law Firm, in its motion to dismiss, satisfied the two-part test set out in *Jaramillo*. Plaintiffs were aware when the third party obtained a judgment against them on May 21, 1991, in the breach of contract action, that they had suffered loss as a result of the advice given by Kavanagh. Interest began to accrue on the judgment entered against the corporation from the date it was entered, even though the case was pending on appeal. NMSA 1978, § 56–8–4 (Repl.1986). Plaintiffs retained new counsel to represent them on the appeal, and also to defend them against the Law Firm's complaint, and, at that juncture, Plaintiffs, as a matter of law, were on notice that they had suffered damages and that their claim against the Law Firm for legal malpractice constituted a compulsory counterclaim within the contemplation of SCRA 1–013(A).

### F. Was the Time for Filing Counterclaim Tolled?

■ Lastly, Plaintiffs contend that their claim for legal malpractice against the Law Firm was not a compulsory counterclaim at the time the Law Firm filed its action for legal fees, because the requirement for filing the counterclaim was tolled during the pendency of their appeal in the suit for breach of contract.

Courts in other jurisdictions that have considered the issue of whether a cause of action for legal malpractice is tolled during the pendency of an appeal have reached different results. Several courts have held that a cause of action for legal malpractice is tolled during the pendency of an appeal. *See Northwestern Nat'l Ins. Co. v. Osborne*, 573 F.Supp. 1045, 1050 (E.D.Ky.1983) (damage to client from attorney's alleged malpractice did not accrue until interim appeal was denied); *Bowman v. Abramson*, 545 F.Supp. 227, 228 (E.D.Pa.1982) (attorney not subject to suit for legal malpractice until client completed appeal); *AMFAC Distribution Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795, 796 (Ariz.Ct. App.1983) (during pendency of appeal *in ac-tion where malpractice is alleged to have occurred*, element of injury or damage remains speculative or remote); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991) (cause of action for legal malpractice *that occurs during litigation* remains tolled until appeal in underlying action is exhausted).

Contrary results have been reached by other courts. *See Law Offices of Jerris Leonard, P.C. v. Mideast Sys. Ltd.*, 111 F.R.D. 359, 363 (D.D.C.1986) (legal malpractice claim deemed to have occurred when summary judgment entered against it or at latest when answer was due in suit for legal fees); *Lansford v. Harris*, 174 Ariz. 413, 850 P.2d 126, 131–32 (Ariz.Ct.App.1992) (malpractice action that arises from a transaction or occurrence, as distinguished from claim that arises during course of litigation, accrues when judgment or order is entered and client sustains some damages)[3]; *Zupan v. Berman*, 142 Ill.App.3d 396, 96 Ill.Dec. 889, 891–92, 491 N.E.2d 1349, 1351–52 (1986) (statute of limitations for legal malpractice began to run when adverse judgment was entered, not when appellate court modified judgment); *Chambers v. Dillow*, 713 S.W.2d 896, 898–99 (Tenn.1986) (injury for legal malpractice held to have accrued when lawsuit was initially dismissed).

As observed in Restatement (Second) of Judgments, *supra*, Section 13, comment f:

> A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal.

Similarly, the same authority notes:

> There have been differences of opinion about whether, or in what circumstances, a judgment can be considered final for purposes of res judicata when proceedings have been taken to reverse or modify it by appeal. The better view is that a judg-

---

3. Conversely, the court in *Lansford* held that damages cannot be determined until all appeals have been exhausted when malpractice arising out of "litigation," rather than "transactional" malpractice case is involved.

ment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo; finality is not affected by the fact that the taking of the appeal operates automatically as a stay or supersedeas of the judgment appealed from that prevents its execution or enforcement, or by the fact that the appellant has actually obtained a stay or supersedeas pending appeal.

The pendency of a motion for new trial or to set aside a judgment, or of an appeal from a judgment, is relevant in deciding whether the question of preclusion should be presently decided in the second action. It may be appropriate to postpone decision of that question until the proceedings addressed to the judgment are concluded.

We believe that application of the principles set forth in comment F of the Restatement, *supra*, is consistent with New Mexico precedent and the goal of fostering judicial economy. While tolling the counterclaim could lead to judicial economy if the appeal leads to reversal, the opposite result applies where the appeal is affirmed. *Cf. Johnson v. Schmidt*, 719 S.W.2d 825, 826 (Mo.Ct.App. 1986) (criminal defendant must obtain a reversal based on ineffective assistance of counsel before he had basis for a malpractice claim). Both a malpractice case and a fee dispute case turn on the competence of counsel and joinder of these claims would have the benefit of avoiding duplication of testimony and evidence. *See Felger v. Nichols*, 35 Md.App. 182, 370 A.2d 141, 143 (Md.Ct. Spec.App.1977). *See generally* Mallen & Smith, *supra*, § 27.6, at 640.

A finding of tolling would also be inconsistent with the finality we accord district court judgments for similar purposes. For example, in *Leonard Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 102 N.M. 50, 52, 690 P.2d 1044, 1046 (Ct.App.1984), the appellant argued the statute of limitations for actions founded on a judgment should be tolled during the pendency of an appeal. We rejected that argument, saying:

Although a judgment may be voidable in part, it has the same force and effect as though no error existed[,] and until superseded, reversed, or vacated it is binding, enforceable, and possesses all of the attributes of a valid judgment. *State v. Patten*, 41 N.M. 395, 69 P.2d 931 (1937); *In re Field's Estate*, 40 N.M. 423, 60 P.2d 945 (1936).

.... An appeal from a final judgment does not affect the judgment-holder's right to execute upon the judgment. An appeal, therefore, does not postpone or suspend the operation of the statute of limitations from the date of entry of a final judgment unless a supersedeas bond is posted or a stay of enforcement is ordered by the court.

*Id.; see also Bank of Santa Fe*, 106 N.M. at 586, 746 P.2d at 1118.

Plaintiffs also appear to argue that the requirement for filing their legal malpractice claim was tolled because of the continuous representation rule. Courts in several jurisdictions that have held that a cause of action for legal malpractice accrues when the injury occurred or when damage is apparent, have also held that where a client continues to be represented by the attorney who is allegedly guilty of malpractice, the malpractice claim is tolled or deferred while the attorney continues to represent the client. *See, e.g., Amfac Distribution Corp.*, 673 P.2d at 797–98; *Pittman v. McDowell, Rice & Smith, Chartered*, 12 Kan.App.2d 603, 752 P.2d 711, 715–16 (1988); *Greene v. Greene*, 80 A.D.2d 55, 437 N.Y.S.2d 339, 341–42 (1981); *Feudo v. Pavlik*, 55 Ohio App.3d 217, 563 N.E.2d 351, 352 (1988); *Hughes*, 821 S.W.2d at 156. Several states have enacted legislation expressly codifying the continuous representation rule. *See* Mallen & Smith, *supra*, § 18.12, at 117. Mallen and Smith also observe:

The rule of continuous representation is equally available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for permitting an attorney to continue efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all concerned parties.

*Id.* at 115.

We assume, but do not decide, that the continuous representation rule is applica-

**130**

ble in New Mexico. In the present case, however, the rule does not aid Plaintiffs. After Plaintiffs were served with the Law Firm's complaint in its action to recover its legal fees, Plaintiffs retained a new attorney to handle the appeal of the employment contract case and to represent them in the suit for legal fees. Thus, when Plaintiffs filed their answer to the Law Firm's suit for legal fees, their claim for legal malpractice had fully accrued. Plaintiffs' failure to assert such cause of action as a compulsory counterclaim under SCRA 1–013(A) barred the subsequent filing of the malpractice claim in the present action. *See also Law Offices of Jerris Leonard,* 111 F.R.D. at 361 (failure to file compulsory counterclaim for legal malpractice in attorney's action for legal fees bars later assertion of malpractice claim); *B.J. Howard Corp. v. Skinner, Wilson, Strickland, Hardy & Benson,* 172 Ga.App. 446, 323 S.E.2d 664, 665 (1984) (malpractice claim relating to law firm's representation of plaintiff held to constitute compulsory counterclaim in action for legal fees).

*CONCLUSION*

The order denying the Law Firm's motion to dismiss is reversed, and the cause is remanded for entry of an order dismissing Plaintiffs' complaint.

IT IS SO ORDERED.

BLACK and FLORES, JJ., concur.