**R.D.H. COMMUNICATIONS, LTD., et al., Appellants,**

**v.**

**James L. WINSTON, et al., Appellees.**

**No. 96–CV–143.**

District of Columbia Court of Appeals.

Argued Jan. 28, 1997.

Decided Sept. 18, 1997.

John K. Henderson, Jr., was on the brief for appellants.

Jack A. Gould, Washington, DC, for appellees. Aaron L. Handleman, Washington, DC, also entered an appearance for appellees.

Before SCHWELB and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

In this legal malpractice action, the clients (appellants) argue we should adopt the continuous representation rule in relation to the statute of limitations. Under such a rule, the statute of limitations on their claim would begin to run on the date their attorney (appellee) ceased to represent them in the specific matter in which he allegedly committed malpractice. We hereby adopt the continuous representation rule and, therefore, reverse and remand.

## I.

Appellee attorney James L. Winston represented appellant R.D.H. Communications, Ltd. in its effort to build a new FM radio station in Baker, Louisiana. Winston was responsible for preparing and filing an application to the Federal Communications Commission ("FCC"). On January 28, 1991, the FCC dismissed the application because it failed to include a financial certification page.

On January 29, 1991, Attorney Winston wrote to Mr. David Greenberg, the son of one of R.D.H.'s limited partners, and offered three explanations as to what could have happened to the missing page: (1) the page was lost in the process of being sent to the general partner of R.D.H., Ms. Renette Hall, for signature and return to Winston's office; (2) the page was lost during the photocopying process prior to being filed with the FCC; and (3) the FCC lost the page. Winston stated the second scenario raised the possibility that the page might have been lost by the law firm, but that in ten years of filing such applications this was the first time there had ever been a missing page. Winston indicated the firm would be preparing a petition for reconsideration and offered the following analysis:

It is too early to provide a complete assessment of the likelihood of success of our petition. However, our initial research suggests that we have a strong argument for reinstatement. We will do everything we can to get the application reinstated, and I will keep you fully advised of our progress.

On February 19, 1991, Winston sent a copy of the petition for reconsideration in the FCC to R.D.H. partner Renette Hall. In his cover letter, he wrote:

I am confident that we will be successful in obtaining reinstatement of your application. I will keep you advised.

The FCC denied the petition for reconsideration and the United States Court of Appeals for the District of Columbia Circuit affirmed, on a motion for summary affirmance, the FCC's decision. On March 15, 1994, Winston wrote to R.D.H. partner Hall indicating that it was unlikely that the Court of Appeals would rehear a case that was decided on summary affirmance and it was unlikely that the United States Supreme Court would accept their case on appeal. Winston concluded:

Therefore, we have come to the end of the road on this case. I regret it did not turn out differently. Best regards, please stay in touch.

R.D.H. and limited partner Lawrence Weinberg sued Winston and his law firm for malpractice on August 17, 1995. The trial court found that R.D.H. knew or should have known of the injury on January 29, 1991, the date of the first letter from Attorney Winston; and therefore, based on the discovery rule, the cause of action accrued on that date. Thus, the court reasoned, the action was time-barred by the three-year statute of limitations, pursuant to D.C.Code § 12–301 (1995 Repl.), and granted the defendants' motion for summary judgment. R.D.H. filed a motion for reconsideration. The trial court denied this motion, but noted that its failure to invoke the so-called continuous representation rule may be unnecessarily harsh to plaintiffs who may have been injured by defendants' alleged malpractice. The court concluded it was applying the law "as it stands" and noted any change in the law should come from the Court of Appeals.

## II.

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Super. Ct. Civ.

R. 56(c) (1997). In reviewing the trial court's grant of summary judgment, we conduct an independent review of the record applying the same standard as the trial court. *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc). Where there is a question of law and the facts are undisputed, we will reverse the trial court only if the court reached an erroneous conclusion. *Dale Denton Real Estate v. Fitzgerald*, 635 A.2d 925, 927 (D.C.1993).

■ The statute of limitations for a legal malpractice claim is governed by the discovery rule "in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989).

Under this rule, a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.

*Id.* (citing *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 425 (D.C.1986)). Therefore, under the statute of limitations, R.D.H. had three years from the date of discovery to bring suit against Winston and his firm. Because the trial court found the discovery occurred on January 29, 1991, when Winston notified R.D.H. that his law firm might have lost the missing page, R.D.H. should have filed suit on or by January 29, 1994. Instead, the attorney malpractice claim was filed on August 17, 1995.

■ Assuming, but not deciding, that the trial court correctly found the discovery occurred on January 29, 1991, the discovery

rule alone would bar this suit. But we are faced here with the question of whether this jurisdiction should adopt the continuous representation rule for legal malpractice claims. We think that it should and now hold that the continuous representation rule is applicable in the District of Columbia. Under this rule,

when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated.

*Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C.1978).[1] Thus, in essence, under the continuous representation rule the cause of action is tolled until the attorney ceases to represent the client in the specific matter at hand. Here, when the representation by Winston and his firm terminated is a question of fact that should be answered upon remand to the trial court. *Wall v. Lewis*, 393 N.W.2d 758, 763 (N.D. 1986).

The purpose and parameters of the rule have been recognized by the United States Court of Appeals for the District of Columbia:

The rule's primary purpose is to avoid placing a client in the untenable position of suing his attorney while the latter continues to represent him. For that reason, the rule is limited "to situations in which the attorney who allegedly was responsible for the malpractice continues to represent the client in that case."

*Williams v. Mordkofsky, supra* note 1, 284 U.S.App. D.C. at 57, 901 F.2d at 163 (quoting *Glamm v. Allen*, 57 N.Y.2d 87, 453 N.Y.S.2d

1. Although we described the continuous representation rule in *Weisberg, supra*, we declined to adopt it there where appellants brought suit more than five years after their lawyers were granted leave to withdraw as counsel. We noted that even if we were to adopt the rule, appellants' claim would still be barred. *Id.* Twelve years later, the United States Circuit Court of Appeals for this jurisdiction recognized this court had not yet adopted the rule explicitly, and reasoned that even if we had, it was inapplicable to the case at hand. *Williams v. Mordkofsky*, 284 U.S.App. D.C. 52, 57, 901 F.2d 158, 163 (1990). In *Williams*, the trial court ruled that the claim

accrued in November 1984, when the clients were sufficiently aware of their counsel's actions. Because the clients sued their former counsel more than three years later on January 7, 1988, the action was time-barred. The clients argued that the continuous representation rule tolled the limitations period until some time in 1985. The Court of Appeals disagreed noting that the clients had terminated their counsel's formal representation in September 1984. By November 1984, it was clear that the parties were in an adversarial position and that the clients were no longer relying on counsel for legal advice. *Id.*

674, 677, 439 N.E.2d 390, 393 (1982)). Indeed, the rule is based on respect for the attorney/client relationship and the desire, if the client so chooses, to avoid unnecessarily disrupting the representation in which the error occurred. Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 21.12, at 817 and 824 (4th ed.1996).

> The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to end the relationship, although the option exists.

*Id.* at 817.[2]

In this case, there could be no clearer proof that Winston and the firm were attempting to remedy the error. Winston informed R.D.H. that his law firm might have lost the financial certification page, and in fact, assured R.D.H. that his firm would "do everything we can to get the application reinstated." Undoubtedly, at this point R.D.H. could have fired Winston and hired a new attorney to both get the application approved and file a malpractice claim against Winston and his firm. However, R.D.H.'s decision to stay the course with Winston is not one this court should second-guess in relation to the statute of limitations issue. Shortly after informing R.D.H. of the original error, attorney Winston assured R.D.H. partner Hall that he was "confident that we will be successful in obtaining reinstatement of your application." Whether R.D.H. chose to remain with Winston because of his assurances, because of his firm's ten years of experience in filing such applications, or because of blind loyalty is of no consequence to us now. Often, a client looks to his attorney for advice in areas in which he knows little to nothing. This is a relationship of trust and we see no compelling reason for effectively informing the client that he can no longer trust the professional from whom he seeks guidance, especially when this professional with expertise in the field indicates he is confident that the error can be remedied. *See Greene v. Greene*, 56 N.Y.2d 86, 451 N.Y.S.2d 46, 51, 436 N.E.2d 496, 501 (1982) ("A client who entrusts his assets to an attorney for professional assistance often faces the same dilemma as the client who entrusts his case to an attorney for possible litigation. In neither instance can the client be expected, in the normal course, to oversee or supervise the attorney's handling of the matter, and thus in neither case is it realistic to say that the client's right of action accrued before he terminated the relationship with the attorney.").

The reasoning behind the continuous representation rule is similar to that of the continuous treatment rule in medical malpractice actions and, in fact, the continuous representation rule is often considered an adaption of the latter doctrine. *See* Francis M. Dougherty, *When statute of limitations begins to run upon action against attorney for malpractice*, 32 A.L.R.4th 260 § 17[a], at

---

**2.** Another policy reason for adopting the continuous representation rule appears in jurisdictions applying the occurrence rule, whereby the statute of limitations runs from the date of the alleged negligent act. In contrast, the District of Columbia employs the discovery rule in cases "where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury...." *Knight, supra,* 553 A.2d at 1234. Under the discovery rule, the statute of limitations begins to run when the client knows or reasonably should know of the alleged negligence. However, "[i]n ordinary negligence actions, a cause of action accrues for statute of limitations purposes at the time the injury actually occurs." *Id.; see also Poole v. Lowe,* 615 A.2d 589, 592 n. 7 (D.C.1992) (explaining that the District of Columbia has rejected the occurrence rule and instead adopted the "damage rule" whereby the cause of action accrues when the plaintiff/client suffers actual injury). In a jurisdiction applying the occurrence rule, the negligence might not come to light until the case is resolved and by that time the statute of limitations might have already expired. Thus, the continuous representation rule prevents the attorney from delaying the eventual outcome of the case in order to take advantage of the statute of limitations. *See Siegel v. Kranis,* 29 A.D.2d 477, 288 N.Y.S.2d 831, 835 (1968) (attorney's failure to serve notice of claim by May 1960, did not come to light until conclusion of litigation in September 1965, when the jury decided the claim was untimely and the permanent stay of arbitration of the claim resulted, and it appeared clients were never fully advised on the litigation concerning the timeliness issue until shortly before trial); *cf. Farris v. Compton,* 652 A.2d 49, 55 (D.C.1994) (quoting *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 232, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959), where "the Court applied the principle, 'deeply rooted in our jurisprudence,' that 'no man may take advantage of his own wrong' ").

339 (1984) (citing *Siegel, supra* note 2, 29 A.D.2d 477, 288 N.Y.S.2d 831). In *Siegel,* the court found the continuous treatment doctrine to be "equally relevant to the conduct of litigation by attorneys." 288 N.Y.S.2d at 834. In comparing the medical context to the legal, the court found the resemblance to be "more than superficial." *Id.* Both relationships (physician/patient and attorney/client) are "marked by trust and confidence," present an aspect "not sporadic but developing," and both the patient and the client are "necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed." *Id.* The fact

> that it would be ludicrous to expect a patient to interrupt a course of treatment by suing the delinquent doctor ... holds true as well in the case of a client who has confided his cause to an attorney. The client is hardly in a position to know the intricacies of the practice or whether the necessary steps in the action have been taken. For better or for worse, the client must depend on his attorney to pursue the litigation diligently and according to the rules.

*Id.* at 834–35.

While we have earlier rejected the continuous treatment doctrine for medical malpractice claims, we did so almost twenty years ago in a case in which we adopted the discovery rule for such cases. *Burns v. Bell,* 409 A.2d 614 (D.C.1979). Here, we are not asked to choose either the discovery rule or the continuous representation rule. Instead, we are asked to adopt the continuous representation rule as an exception to the discovery rule thereby extending the time period of filing suit so as to allow the attorney the opportunity to correct or mitigate the error and thus perhaps negate the need for the suit. *See* Mallen & Smith, *supra,* at 18 ("The rule of continuous representation is available and appropriate in those jurisdictions adopt-

ing the damage and discovery rules."); *Murphy v. Smith,* 411 Mass. 133, 579 N.E.2d 165, 167–68 (1991) (cause of action governed by discovery rule but continuous representation rule tolls the statute of limitations until attorney's termination). The rule will reduce the number of malpractice claims where such claims have been redressed by the attorney at fault. Should the attorney not prevail in remedying the error, the client still has the opportunity to bring suit upon the end of the representation.

## III.

Several courts have found the policy reasons behind the continuous representation rule persuasive and thus adopted the rule. *See Wilder v. Meyer,* 779 F.Supp. 164, 169 (S.D.Fla.1991) (two-year statute of limitations runs from the date the cause of action is discovered or should have been discovered but is tolled by the continuing representation doctrine); *Pittman v. McDowell, Rice & Smith, Chartered,* 12 Kan.App.2d 603, 752 P.2d 711 (1988); *Lima v. Schmidt,* 595 So.2d 624, 630 (La.1992) (noting the continuous representation rule has been recognized and is based on the application of "*contra non valentum,* which suspends prescription when the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action"); *Murphy v. Smith, supra,* 411 Mass. 133, 579 N.E.2d 165; *Greene v. Greene, supra,* 56 N.Y.2d 86, 451 N.Y.S.2d 46, 436 N.E.2d 496; *Jacobsen v. Haugen,* 529 N.W.2d 882 (N.D.1995); *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988); *Keegan v. First Bank,* 519 N.W.2d 607 (S.D.1994); *Keller v. Denny,* 232 Va. 512, 352 S.E.2d 327 (1987); *Smith v. Stacy,* 198 W.Va. 498, 482 S.E.2d 115 (1996).[3]

Other courts have adopted an exhaustion of appeals rule through which the cause of action accrues when the plaintiff knows or reasonably should know of the malpractice

---

**3.** The rule has also been legislatively adopted in several states. *See O'Neill v. Tichy,* 19 Cal. App.4th 114, 25 Cal.Rptr.2d 162, 165 (1993) (noting the continuous representation rule has been legislatively adopted and "that the client's awareness of the attorney's negligence does not interrupt the tolling of the limitations period so

long as the client permits the attorney to continue representing the client regarding the specific subject matter in which the alleged negligence occurred"); *Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.,* 181 Mich.App. 642, 449 N.W.2d 673 (1989) (continuous representation rule is codified in statute of limitations).

and when the damages are certain and not contingent upon the outcome of the appeal. In other words, the cause of action accrues when the case has come to the end of the appellate process. *See Amfac Distrib. Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795 (Ct. App.) (limiting the exhaustion of appeals rule to malpractice occurring during the course of litigation and citing, as giving "direct support to our holding," the New York cases applying the continuous representation rule that highlight the client's confidence in the attorney's ability and good faith), *approved as supplemented*, 138 Ariz. 152, 673 P.2d 792 (1983); *Semenza v. Nevada Med. Liab. Ins. Co.*, 104 Nev. 666, 765 P.2d 184 (1988) (citing *Amfac*); *Neylan v. Moser*, 400 N.W.2d 538 (Iowa 1987) (same).

While this court has rejected an exhaustion of appeals rule, *see Knight, supra*, 553 A.2d at 1234–36 & n. 2, we did so, in part, because the exhaustion of appeals rule manipulates the concept of legal injury. In this jurisdiction, a legal malpractice claim becomes ripe when there is "client knowledge of some injury, its cause, and related wrongdoing." *Id.* at 1236. We critiqued the resolution or exhaustion of appeals rule as being premised on the notion that a client does not sustain actionable injury until a lower court judgment, adverse to that client, is affirmed on appeal. In fact, we noted that in appealing that adverse judgment, the client sustains injury such as attorney's fees and court costs. *Id.* at 1235. The result is not different even where the client prevails on appeal. "While a successful appeal undoubtedly will reduce a client's damages, it will not necessarily prove that the lawyer's negligence did not injure the client." *Id.* at 1235. Although the exhaustion of appeals rule is meant to prevent clients from prematurely rushing into court before their attorney's malpractice can be proved, we found that the proper application of the discovery rule would address these concerns. *Id.* at 1236 ("in some circumstances ... trial of the malpractice action should be stayed pending the appeal" of the underlying case when the client's damages are finally ascertainable).

The adoption of the continuous representation rule, as an exception to the discovery rule, fully addresses these concerns without any manipulation of the concept of legal injury. *See Ranier v. Stuart & Freida, P.C.*, 887 P.2d 339, 342 & n. 11 (Okla.Ct.App.1994) ("The continuous representation rule has been consistently recognized even in jurisdictions which hold that the statute of limitations is not tolled pending final resolution of the underlying litigation."). When a client chooses to remain with his attorney, his decision, like a successful appeal, "will not necessarily prove that the lawyer's negligence did not injure the client." For example, in the instant case, had Winston successfully appealed the denial of the application presumably R.D.H. could still sue Winston for the delay in getting the application approved. But, whether to sue an attorney who fixed the error and whom a client may wish to employ in the future (perhaps out of the attorney's expertise in the area or a longstanding relationship between the attorney and client), is a° decision for the client to make. *See infra* at 772–773.

Several courts have rejected the continuous representation rule. *See Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991) (rejecting termination of employment rule to avoid having individuals defend themselves from stale malpractice claims with the possibility that records or witnesses may no longer be available, and deeming a change in the statute of limitations rule more appropriate for legislative action); *Fairway Dev. Co. v. Petersen, Moss, Olsen, Meacham & Carr*, 124 Idaho 866, 865 P.2d 957, 961 (1993) (noting the Idaho legislature has specifically barred the rule); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill.App.3d 540, 206 Ill.Dec. 891, 894, 646 N.E.2d 23, 26 (1995) (failing to find a case adopting the rule in Illinois and noting the Illinois Supreme Court's rejection of the continuing course of treatment doctrine "suggests the court is not ready to adopt a continuous representation rule" for legal malpractice claims); *Zero Mfg. Co. v. Husch*, 743 S.W.2d 439 (Mo.Ct.App.1987); *Schneider v. Leaphart*, 228 Mont. 483, 743 P.2d 613 (1987) (declining to judicially adopt the continuous representation rule where such a rule is not in the legal malpractice statute), *cf. Northern Mont. Hosp. v. Knight*, 248 Mont. 310, 811 P.2d 1276, 1280–

81 (1991) (applying the continuous representation rule to architects and distinguishing *Schneider* which concerned a different statute); *Sherman Industries, Inc. v. Goldhammer*, 683 F.Supp. 502, 509 n. 9 (E.D.Pa. 1988); *Stanbury v. Bacardi*, No. 01–A–01– 9509–CV–00420, 1996 WL 200338, \*5, 1996 LEXIS 251, \*25–26 (Tenn.Ct.App.1996) (Koch, J., concurring in part and dissenting in part); *Merkley v. Beaslin*, 778 P.2d 16 (Utah.Ct.App.1989) (rejecting the "termination of services rule because it would permit a client with knowledge of the attorney's negligent act to say nothing" during the relationship "and, thus, needlessly prolong the attorney's potential exposure to suit long after the client had discovered the malpractice"); *Boehm v. Wheeler*, 65 Wis.2d 668, 223 N.W.2d 536 (1974) (concluding the rule is for

the legislature to consider), *overruled by Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 823 and n. 1 (1991) (Abrahamson, J., dissenting) (citing Mallen & Smith for a discussion of the continuous representation rule); *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 571 (Wyo.1996) (declining to judicially adopt the rule where it is absent from the legal malpractice statute; even if the rule was applied in the instant case it would not save the cause of action).[4]

## IV.

Unlike some courts which deem the continuous representation rule inapplicable once the client knows of the attorney's alleged error,[5] we believe the client's knowledge

4. Courts of several states have discussed the continuous representation rule but for various reasons have come short of adopting the rule. *See Beesley v. Van Doren*, 873 P.2d 1280, 1283 n. 4 (Alaska 1994) (noting the court is not asked to adopt the continuous representation rule but it has opined that it might adopt such a rule and citing *Wettanen v. Cowper*, 749 P.2d 362, 365 (Alaska 1988)); *Morris v. Geer*, 720 P.2d 994 (Colo.Ct.App.1986) (noting Colorado has not adopted the rule but that it would be inapplicable in the present case); *S.M.S. Textile Mills v. Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn.App. 786, 631 A.2d 340 (1993) (noting the continuous representation theory has never been discussed in an opinion by the court or Connecticut's Supreme Court and plaintiff has not demonstrated that through a continuing course of conduct defendant breached a duty after or in relation to the alleged torts); *Shuttleworth v. Lynch*, No. 94C–08–124, 1995 Del.Super. LEXIS 236, 1995 WL 339071 (April 25, 1995) (discusses the continuous representation rule but notes that the case is covered by the discovery rule); *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 125 (Ky.1994) (deciding the case on other grounds but noting there "are sound theoretical and practical reasons for adoption of the continuous representation rule" and had this been "the decisive issue, appellees would prevail as their claim was brought within one year of the date appellants' representation came to an end"); *Larochelle v. Hodsdon*, 690 A.2d 986 (Me.1997) (court need not reach the issue of the continuous representation rule); *Anoka Orthopaedic Assoc., P.A. v. Mutschler*, 773 F.Supp. 158, 169 (D.Minn.1991) ("Although no Minnesota court has explicitly adopted the continuous representation doctrine, the Minnesota Supreme Court and Court of Appeals have reached essentially the same result on facts similar to those in the present case by determining that the statute of limitations begins to run as of the date when the last professional service was

performed."); *Stevens v. Lake*, 615 So.2d 1177 (Miss.1993) (discussing the continuous representation rule and finding that attorney represented client on other matters after the alleged malpractice therefore this later representation did not toll the statute of limitations); *Brunacini v. Kavanagh*, 117 N.M. 122, 869 P.2d 821, 828–29 (Ct.App.1993) ("We assume, but do not decide, that the continuous representation rule is applicable in New Mexico. In the present case, however, the rule does not aid Plaintiffs."); *Sharp v. Teague*, 113 N.C.App. 589, 439 S.E.2d 792 (1994) (assumes without deciding that North Carolina recognizes the continuous representation doctrine but the doctrine is inapplicable in the present case where complaint is insufficient to allege that the defendants continued to represent the plaintiff with regard to her claims which are the basis of the malpractice action); *St. Paul Fire & Marine Ins. Co. v. Speerstra*, 63 Or.App. 533, 666 P.2d 255, 259 n. 7 (1983) ("Whether the continuous representation rule is to be adopted, and what should be its scope, are not necessary to be decided here.") [hereinafter *St. Paul* ], *but see Fliegel v. Davis*, 73 Or.App. 546, 699 P.2d 674, 676 & n. 2 (1985) (questioning the authority of *St. Paul* in light of later cases, and noting court by its holding in present case did not want to imply that a client should have hired another attorney to sue original attorneys for negligence while original attorneys were still representing client on appeal); *Richmond Square Capital Corp. v. Mittleman*, 689 A.2d 1067 (R.I.1997) (court need not address whether the continuous representation doctrine is applicable to the case).

5. *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 475 N.W.2d 899, 900 (1991) (continuous representation rule inapplicable where claimant discovers alleged negligence prior to termination of professional relationship because to "hold otherwise would merely encourage clients to sit on

should not nullify the rule. A policy behind the rule is respect for the attorney/client relationship. A client may fully know his attorney has erred to his detriment, and still willingly place his confidence in the attorney's ability to correct the error. We see no reason for interfering with such a decision. Indeed, if we rejected the continuous representation rule, we would force the client into one of two scenarios. If the client chooses to retain his attorney, he risks the possibility that during such representation the statute of limitations would expire (because the client "discovered" the alleged negligence and three years passed) and thus he risks foregoing redress of his legal rights. If the client chooses not to stay with his original attorney he must sue that attorney for malpractice (and presumably hire a new attorney to remedy the error in the underlying case thus causing a major disruption to the underlying case). By adopting the continuous representation rule we avoid such a fish or cut bait scenario.[6]

Our adoption of the continuous representation rule even where the client knows of the attorney's negligence is thoroughly consistent with other rules we have adopted in the area of legal malpractice. In *Diamond v. Davis*, 680 A.2d 364 (D.C.1996) (per curiam),

upon being sued for malpractice the law firm asserted the statute of limitations, while the client asserted the firm had fraudulently concealed an alleged conflict of interest. The trial court granted summary judgment for the law firm and we affirmed. There, the issue presented was what was the legal standard to be applied in determining when the client's cause of action accrued. *Id.* at 370. The client argued that accrual was delayed until "he had something close to actual notice of that cause of action." *Id.* at 371. The law firm insisted that the same discovery rule for "actions based on legal malpractice applie[d], regardless of any fraud or fraudulent concealment." *Id.* We agreed with the law firm, saying

> [W]e take this opportunity to state that the standard is in fact the same in all cases to which the discovery rule applies, regardless of the presence or absence of fraud, or the characterization of that fraud. In every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all of the circumstances. Once the plaintiff actually knows, or with the exercise of reasonable diligence would have known, of some injury, its cause-in-fact, and some evidence of wrongdoing, then she is bound to file her

their hands, with full knowledge of negligence on the part of the professional who is serving them, knowing that the clock would not start to run on their claim until they actually fired the practitioner"); *Sharp, supra* note 4, 439 S.E.2d at 795 (while assuming continuous representation rule is recognized in North Carolina, stating that under rule statute of limitations accrues the earlier of either the date the attorney ceases to represent client in matter or the date the client becomes aware of the negligent act); *see generally Ranier, supra,* 887 P.2d 339 (discussing continuous representation rule and holding that statute of limitations for legal malpractice action may be tolled until resolution on appeal of the underlying case if the client has not become aware of the harm prior to the decision on appeal); *St. Paul, supra* note 4, 666 P.2d at 259 n. 7 (while not deciding to adopt the continuous representation rule, the court noted that the fact that the plaintiffs chose to permit defendants' representation to continue past the time when they knew there was a conflict of interest is not controlling on the running of the statute of limitations); *Murphy, supra,* 579 N.E.2d at 169 (O'Connor, J., dissenting) ("According to the doctrine, which is entirely reasonable, the dependence of the client on his or her attorney while the representation continues

makes any malpractice in connection therewith inherently unknowable by the client."). For a discussion of the continuous representation rule in New Jersey where courts find the rule inapplicable if there is client knowledge, see Nancy J. Moore, *Implications of Circle Chevrolet for Attorney Malpractice and Attorney Ethics,* 28 RUTGERS L.J. 57, 65–69 (1996).

6. For a critique of those courts which consider the continuous representation rule inapplicable where the client knows of the alleged negligence, see *Smith v. Stacy, supra,* 198 W.Va. 498, 482 S.E.2d 115. The West Virginia Supreme Court criticizes both the Nebraska and North Carolina courts for their interpretations of the rule. Specifically, the court notes that deeming the rule inapplicable " 'runs counter to the rationale for the rule ...' designed to permit a 'client to work with the attorney to correct the error even though the client knows the error exists.' " *Id.* at 123 (quoting *Morrison v. Watkins,* 20 Kan. App.2d 411, 889 P.2d 140, 147 (1995)). The West Virginia Supreme Court describes the North Carolina description of the rule as appearing to not be "an appropriate statement of the rule." 482 S.E.2d at 123 n. 9.

cause of action within the applicable limitations period, measured from the date of her acquisition of the actual or imputed knowledge.

*Id.* at 381. Our ruling today does not negate the holding articulated in *Diamond.* Our ruling today only adds to the doctrine by granting the client the decision to retain or terminate his attorney even where he knows of the wrongdoing. Thus, the statute of limitations in cases of fraudulent concealment begins to run when the wrongdoing is discovered or when the representation is terminated, whichever is later.

We recognize that the continuous representation rule, like any other, is not entirely without its shortcomings. Indeed, several courts have rejected it. *See supra* at 771–772. No individual wants to defend himself against claims arising from acts occurring years earlier. Witnesses become unavailable, memories fade and documents are lost. But, as we have stated before, "limitations periods 'find their justification in necessity and convenience rather than in logic.... Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual.'" *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1202 (D.C.1984) (quoting *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945)). In *Ehrenhaft,* we determined that in applying the discovery rule to tort and contract claims arising out of allegedly deficient design and construction of an addition to a house, "the burden imposed upon a defendant to defend against an 'old' claim" was "not unreasonable." 483 A.2d at 1202. We reasoned that while applying the discovery rule "favors a plaintiff's interest in compensation," it "is somewhat tempered by the fact that the burden of proof remains upon the plaintiff." *Id.*

The same dynamics apply to the instant case. Winston and his firm now face a claim that they committed malpractice some time in 1990 or early 1991. While surely they may face obstacles in defending themselves against such a claim, the fact remains that the plaintiffs bear the burden of proving that the defendants committed the alleged mal-

practice. Although adopting the continuous representation rule in this case reopens the door for the plaintiffs, the controversy is far from over and the plaintiffs face no small hurdles in their attempts to prevail on the malpractice claim. *Cf.* John H. Bauman, *The Statute of Limitations for Legal Malpractice in Texas,* 44 BAYLOR L. REV. 425, 448 (1992) ("[T]o the extent the attorney is still involved in the action, [the continuous representation rule] certainly alleviates any fairness concerns toward the attorney in tolling the statute, since one can hardly claim to be ambushed while one is still handling the litigation.").

Indeed, our adoption of the rule is not meant simply to benefit clients, but rather to benefit the attorney/client relationship by granting the attorney the opportunity to mend or mitigate the error, if this is so decided by the client. *See Smith v. Stacy, supra,* 482 S.E.2d at 120 (noting the continuous representation doctrine "is designed, in part, to protect the integrity of the professional relationship by permitting the allegedly negligent attorney to attempt to remedy the effects of the malpractice and providing uninterrupted service to the client"); *Morrison v. Watkins,* 20 Kan.App.2d 411, 889 P.2d 140, 148 (1995) (purpose of rule is to benefit both client and attorney by allowing attorney to attempt to remedy the error and allowing client to refrain from discharging attorney upon discovery of error).

Appellees argue, however, that this court would exceed its role by adopting the continuous representation rule as a tolling provision where the legislature has already spoken on when the statute of limitations for "discovered" claims is tolled. *See* D.C.Code § 12–302 (1995 Repl.) (tolling claims for plaintiffs who are minors, noncompos mentis, or imprisoned); *cf. Sayyad v. Fawzi,* 674 A.2d 905, 906 (D.C.1996) ("Rejection of the application of equitable tolling on a case-by-case basis ... rests on the belief that where the legislature has provided no savings statute, courts would exceed their prescribed role by providing a remedy where the legislature has determined that none should lie.").

While at first blush it might appear that the court is intruding into the legislative

power of the other branch of government, on closer examination it is apparent that we are simply deciding when a cause of action accrues, from which the existing enacted statutory period commences. The continuous representation rule, as we adopt it (*see supra* at 768, "the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated"), defines the date of accrual. *See also Pittman, supra,* 752 P.2d at 715 ("'The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.' ... *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 87, 716 P.2d 575, 579 (1986)."); *Siegel, supra* note 2, 29 A.D.2d 477, 288 N.Y.S.2d 831; *Omni–Food & Fashion, Inc., supra,* 528 N.E.2d at 944 (holding the cause of action accrues either when the client discovers or should have discovered, or when the attorney/client relationship for that matter terminates, whichever occurs later); *Keller, supra,* 352 S.E.2d at 330 ("the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated").

Defining accrual is a matter which is better left to the judicial function. *Farris, supra* note 2, 652 A.2d at 61–62 ("In the absence of any clarifying legislation, it is our obligation to construe the word 'accrues' in the existing statute, D.C.Code § 12–301 (1989)."); *Ehrenhaft, supra,* 483 A.2d at 1198 ("The term 'accrual' is left undefined by the statute [D.C.Code § 12–301] and is thus left to judicial interpretation.").

Moreover, we are adopting the continuous representation rule as an exception to our discovery rule. Because the court has the authority to adopt the discovery rule as a way of defining "accrual," [7] there can be no doubt that the court has the authority to adopt the continuous representation rule, an exception to the discovery rule, as a way of defining "accrual" in these cases. This is "a situation—as in the case of the discovery rule—where there is 'no expression of legislative intent to assist us in construing when a cause of action accrues,' and thus 'the question is one for judicial resolution, absent legislative limitation.'" *Bond v. Serano,* 566 A.2d 47, 55 (D.C.1989) (Farrell, J., concurring) (quoting *Bussineau, supra,* 518 A.2d at 436). This court "cannot defer the performance of our judicial duty until the enactment of a new law, an event which may or may not occur." *Farris, supra* note 2, 652 A.2d at 62.

In judicially adopting the continuous representation rule, this court joins many jurisdictions, as related earlier. *See, e.g., Pittman, supra,* 12 Kan.App.2d 603, 752 P.2d 711; *Lima, supra,* 595 So.2d 624; *Murphy, supra,* 411 Mass. 133, 579 N.E.2d 165; *Siegel, supra,* note 2, 29 A.D.2d 477, 288 N.Y.S.2d 831; *Wall, supra,* 393 N.W.2d 758; *Omni–Food & Fashion, supra,* 38 Ohio St.3d 385, 528 N.E.2d 941; *Keegan, supra,* 519 N.W.2d 607; *Keller, supra,* 232 Va. 512, 352 S.E.2d 327; *Smith, supra,* 198 W.Va. 498, 482 S.E.2d 115; *cf. Alagia, Day, Trautwein & Smith, supra* note 4, 882 S.W.2d 121; *Anoka Orthopaedic Assoc., P.A., supra* note 4, 773 F.Supp. 158; *Brunacini, supra* note 4, 117 N.M. 122, 869 P.2d 821.

Accordingly, the judgment in this proceeding is reversed and the proceeding is remanded for a new trial.

*Reversed and remanded.*

---

7. On a number of occasions the court has applied the discovery rule to define when a cause of action accrues. *See Knight, supra,* 553 A.2d at 1236 (key issue for ripeness of a legal malpractice claim is client knowledge of some injury, its cause, and related wrongdoing); *Burns, supra,* 409 A.2d at 617 ("[I]n all medical malpractice actions, the cause of action accrues when the plaintiff knows or through the exercise of due diligence should have known of the injury."); *Ehrenhaft, supra,* 483 A.2d at 1203 ("We therefore hold that in an action based upon tort and contract claims arising out of allegedly deficient design and construction of an addition to a house, the cause of action does not accrue until the plaintiff knows, or in the exercise of reasonable diligence should know, of the injury."); *Farris, supra* note 2, 652 A.2d 49 (where plaintiff in alleged sexual abuse case repressed memory of wrongful conduct, right of action did not accrue until date plaintiff recovered memory of wrongful conduct).